[S. F. No. 10708. In Bank.—December 17, 1923.]

JULIE GRINBAUM (an Insane Person), etc., Petitioner, v. THE SUPERIOR COURT OF THE STATE OF CALIFORNIA et al., Respondents.

[1] GUARDIAN AND WARD—SECTIONS 1763 AND 1793, CODE OF CIVIL PROCEDURE—NOTICE OF HEARING—DUE PROCESS—CONSTITUTIONAL LAW.—The requirement of sections 1763 and 1793 of the Code of

---

1. Necessity and sufficiency of notice to alleged incompetent of application for appointment of guardian or committee, note, 23 A. L. R. 594.

Civil Procedure, relating to proceedings for the appointment of guardians of insane or incompetent persons who do or who do not reside within the state, that notice in some form and of some manner of service must be given to the individuals alleged to be insane or incompetent before the courts can acquire jurisdiction to appoint guardians over their persons or estates does not depend for its sanction upon the express provisions of either of said sections. It rests upon the fundamental doctrine that no person can be deprived of life, liberty, or property without due process of law.

[2] ID.—NOTICE—RETURN OF SERVICE — PRESUMPTION. — When the return of service of notice of the hearing of an application for letters of guardianship over the estate of an alleged insane person shows affirmatively the names of those persons upon whom such service has been made, it cannot be presumed that service has also been made upon one whose name is neither included in the order directing notice to be given, in the notice itself, nor in the affidavits of service thereof.

[3] ID.—ORDER APPOINTING GUARDIAN—NOTICE OF HEARING—RECITALS IN ORDER—PRESUMPTIONS.—Recitals contained in an order appointing a guardian of the estate of an insane person, referring to the petition for letters of guardianship as "coming on regularly to be heard," and reciting "that all notices have been given as required by law and as directed by this court," are insufficient to establish service of notice of hearing of said petition upon the alleged insane person, where such recitals are connected by the further recital declaring "upon due proof to the satisfaction of said court that notice has been given to the relatives of [the alleged incompetent], residing in the Empire of Germany and that none reside in this City and County or in the State of California, and that said insane person resides in and is now in said Empire of Germany," it thus appearing upon the face of the order what notice and proof of service formed the basis of the first recital, and it will not be presumed that any other notice than that thus affirmatively stated is covered by said first recital; while as to the second recital not only does the same reasoning apply but the recital itself grammatically construed means no more than that whatever notices were given, were given in the manner required by law and as directed by the court.

[4] ID.—RECITALS—PRESUMPTIONS.—It is only in the absence of anything to the contrary in the record that the recital that the matter "came on regularly to be heard" must be presumed to be true.

[5] ID.—EVIDENCE—ESTOPPEL—WAIVER—CERTIORARI. — Any conduct or failure to act on the part of the person who is subject to the disqualification of adjudged insanity does not operate either as a waiver or estoppel against the assertion of the right of such

192 Cal.—34

person to have, through a guardian *ad litem,* the guardianship proceedings in which she was adjudged insane reviewed on *certiorari* on the ground of defects of jurisdiction appearing upon the face of the proceedings.

[6] CERTIORARI—DISCRETION.—The granting or refusal of a writ of review is a matter which rests in the sound discretion of the court to which application for such writ is made.

[7] GUARDIAN AND WARD—VOID ORDER OF APPOINTMENT—CERTIORARI— DISCRETION—EVIDENCE.—It would be an exercise of improper discretion to deny a writ of *certiorari* to annul an order appointing a guardian void upon its face for the asserted reasons that the order, although void, was imperatively necessary to the welfare of the alleged incompetent and that the subsequent guardianship proceedings were beneficial to the alleged incompetent and to her property, where the alleged incompetent was at the time of, and for seven years after, the making of said order detained in a hospital for the mentally afflicted in a distant foreign land, had not a single relative in this state, and neither she nor any relative received legal notice of the proceedings subsequent to the making of said order, and it was not until within a year before the institution of the proceeding for a writ of *certiorari* that she came or was brought within the boundaries of this state, and ever since her return has been subject to the legal disability created by said order judicially determining her to have been insane at the date thereof and to have continued so to be while said order remained in force and effect.

[8] ID.—CERTIORARI — EVIDENCE. — The contention that a writ of *certiorari* to annul such void order appointing a guardian should be refused on the ground that confusion, litigation, and prejudice to third persons might result from the annulment of said order cannot be sustained where, so far as the record discloses, no rights of third persons are involved or would be affected by the annulment of said order; and where, as to possible litigation, it is to such very litigation that the court is asked by the parties opposing the writ to relegate the petitioner through their insistence that she should seek her relief in a court of equity rather than by means of the writ; and while as to any confusion in respect to the petitioner's properties or affairs or in respect to the administration thereof during the years of guardianship, the mere fact that the guardian might be required to render an accounting of its stewardship while acting as such under a void order of appointment should not of itself be sufficient to justify the court in refusing to annul said order, since equity will always intervene to protect and uphold the acts and transactions of trustees *de facto* when done in good faith and when the same inure to the benefit of the person or estate of the ward.

[9] ID.—CERTIORARI—REMEDIES.—The right to a writ of *certiorari* to annul a void order appointing a guardian cannot be defeated upon the asserted grounds that the party seeking the writ has the right to appeal from the order of appointment and that he has a remedy by motion in the court making the void order to set the same aside, where the time for an appeal has expired and the petitioner for the writ was not in condition to receive notice of the making of said void order during the time when such appeal might have been taken, and where, as to the second ground, it is not necessary to make such a motion before applying for the writ of *certiorari*.

[10] ID.—APPLICATION FOR RESTORATION TO CAPACITY—SUFFICIENCY OF REMEDY.—Where an order appointing a guardian of the estate of an alleged insane person is void for want of notice to such person, an application for restoration to capacity under the provisions of section 1766 of the Code of Civil Procedure does not afford an adequate remedy to such person in attacking the validity of said order and the subsequent proceedings.

[11] ID.—CERTIORARI—EQUITY—REMEDIES.—In this proceeding in *certiorari* to annul an order appointing a guardian of an alleged insane person on the ground of want of notice of the guardianship proceeding to such person, the contention that the alleged incompetent has a plain, speedy, and adequate remedy in a court of equity in an action to declare said order void cannot be upheld.

PROCEEDING in Certiorari to annul an order of the Superior Court of the City and County of San Francisco appointing a guardian. J. V. Coffey, Judge. Order annulled.

The facts are stated in the opinion of the court.

John Francis Neylan and Philip S. Ehrlich for Petitioner.

Morrison, Dunne & Brobeck and John J. Barrett for Respondents.

RICHARDS, J., *pro tem.*—The original application for a writ of review herein was presented by Julie Grinbaum, acting on her own behalf, and praying for the relief sought therein. A motion to dismiss said application was presented by the respondents named therein upon the ground that the petitioner had not the legal capacity to sue. In support of said motion there was presented a certified copy of an order of the superior court of the state of California, in and for the city and county of San Francisco adjudging the

said petitioner to be at the date thereof, and for some time prior thereto, an insane person, which said order and adjudication at the time of the filing of said application was, and thereafter continued to be in full force and effect. Thereupon. a petition for the appointment of a guardian *ad litem* for said Julie Grinbaum in this and also in certain other proceedings pending before this court was presented by one Erna A. Herrscher, alleging herself to be the nearest blood relative of said Julie Grinbaum and asking for the appointment of John Francis Neylan as such guardian *ad litem* for said petitioner. Thereafter this court made an order granting said application for the appointment of a guardian *ad litem* and making the appointment as prayed for in said petition; which order had the effect of disposing of said motion for a dismissal and placing said applicant in a position through her said guardian *ad litem* to further maintain and prosecute her said application.

The proceedings herein sought to be reviewed are those proceedings in the matter of the guardianship of the estate of Julie Grinbaum which were initiated in the superior court of the state of California, in and for the city and county of San Francisco, on January 9, 1913, by a petition on behalf of the Mercantile Trust Company, a corporation, alleging that said Julie Grinbaum was an insane person having estate and properties in the state of California requiring attention and praying for the appointment of said Mercantile Trust Company as guardian of the estate of said insane person; whereupon such proceedings were had that an order was made by said court on January 27, 1913, appointing said Mercantile Trust Company to be such guardian of the estate of said Julie Grinbaum, an insane person; which proceedings and order are sought to be reviewed in the instant proceeding. The respondents herein are nominally the said Superior Court and the judge thereof, but the real party in interest and actual respondent herein is the Mercantile Trust Company in its capacity as such guardian of the estate of said Julie Grinbaum under and by virtue of the aforesaid order for its appointment as such guardian, and under which it has, ever since the making thereof and its qualification thereunder been and still is the acting guardian of said estate.

The petitioner herein alleges as the basis for her application for the issuance of a writ of review herein, that the order of said superior court made and entered upon January 27, 1913, wherein and whereby the said Mercantile Trust Company was appointed guardian of the estate of Julie Grinbaum was and is void upon the face of the said proceedings forming the basis for said order, since it affirmatively appears therefrom that the said superior court did not acquire and did not have jurisdiction to make said order for the reason that no notice of such proceedings or of the application for said order or of the hearing thereon was ever ordered, issued, or served upon said Julie Grinbaum as required by law. The respondents herein, both by their demurrer and answer herein present and urge certain objections involving the present right of this petitioner to institute or maintain this proceeding, and also urge certain reasons why this court should not exercise its discretion to the extent of granting the relief sought therein. These objections might appear to stand upon the threshold of this proceeding and to require determination in advance of any consideration of the merits of the petitioner's said application; but since the parties to this proceeding, both nominal and real, have by appropriate stipulations agreed that the entire record of the proceedings of the superior court in the matter of the guardianship of the estate of Julie Grinbaum are correctly set forth in the pleadings and exhibits of the respective parties, and are as fully before this court as if they had been brought before it in response to a writ of review, and that the same may be considered by this court as fully as though the record of such proceedings had been embodied in a return to such writ; and since the preliminary objections urged by the respondents herein to the consideration of said application and to the issuance of said writ can only be properly resolved upon and after a full understanding of the whole case and of the merits of the petitioner's said application, the court will first address itself to the main question at issue in this proceeding. This will require a review at some length of the history and record of said proceedings sought to be reviewed herein, together with the history and record of the present proceeding.

In the year 1873 Moritz S. Grinbaum and his wife, Julie Grinbaum, the former a native of Baden and the latter of

Dusseldorf, Germany, came to the United States and settled in San Francisco, which city became and was at all times thereafter the place of their residence and home. They became, in due course, naturalized citizens of the United States. Mr. Grinbaum prospered in his business ventures, which included the acquisition of considerable interests in the Hawaiian Islands, and accumulated a fortune estimated in 1913 at $800,000, a portion of which was invested in San Francisco real estate, but the larger and more productive portion of which consisted of sugar plantations in the islands. In the year 1909 the Grinbaums, who had no children, left San Francisco for an extended European trip. They passed the winter of that year in Berlin, and during the year 1910 visited several places, apparently in search of health. On December 14, 1910, while at Meran, in the Austrian Tyrol, Mr. Grinbaum died, after an operation following a brief illness. By his will, dated August 4, 1904, he left his entire estate to his wife. By a holographic codicil thereto, dated March 2, 1909, he again devised his said estate to his wife if she survived him, but provided that if she predeceased him, one-half of his said estate was to go in equal shares to certain of his blood relations in Germany and the remaining one-half to a blood relative of Mrs. Grinbaum, one Erna Goldschmidt, then living in Germany, and being the daughter of her only sister, then deceased. By the terms of her deceased husband's said will Mrs. Grinbaum was named as the executrix thereof, but she renounced her right to act as such in favor of Albert Meyer, a member of a banking institution known as the Bank of Daniel Meyer, long established in San Francisco, and being at the time of his death her husband's banker and agent. This will was admitted to probate in the superior court of the city and county of San Francisco and said Albert Meyer was appointed as administrator with the will annexed of the decedent's said estate. Mrs. Grinbaum, after her husband's death, went to several places, both in France and Germany, seeking relief from a heart affliction which was complicated by an increasing melancholy due to her husband's death and her own lonely condition and which showed signs of affecting her mind. In 1911 she went, upon the advice of her physicians, to a sanitarium in Baden-Baden devoted to the care of those mentally afflicted. Her condition grew steadily

worse during the following year and until in the latter part
of 1912 her physicians considered the appointment of a
guardian over her and her affairs imperative and instructed
their attorney to institute the necessary proceedings for such
guardianship in the German courts. After an apparently
careful investigation of her case a petition for the appoint-
ment of a guardian was, on November 20, 1912, filed by
the attorney-general in the judicial tribunal of the Grand
Duchy of Baden, Germany, having jurisdiction of such
matters. On December 4, 1912, an order was made therein
appointing one Emil Meyer, described as a banker in Baden,
"*interim* guardian" of the property and person of Mrs.
Julie Grinbaum. This order does not upon its face purport
to be more than temporary, and does not attempt to deter-
mine whether or not Mrs. Grinbaum was at the time insane.
It expressly refers to the appointment of the guardian as
an "*interim*" appointment and to the fact that a proceeding
to determine whether Julie Grinbaum was insane had been
instituted and was then pending. The court, in point of
fact, proceeded with its investigation of the question as to
whether Julie Grinbaum was or was not insane during the
succeeding months, and it was not until May 3, 1913, that
its final adjudication of the fact of Mrs. Grinbaum's insan-
ity was formally made by the German court. In the mean-
time and at an early date in January, 1913, the Bank of
Daniel Meyer in San Francisco received advices from Emil
Meyer, the *interim* guardian of Julie Grinbaum in Baden-
Baden, informing the San Francisco banking house as to her
physical and mental condition and advising the appointment
of a local guardian of her estate. The Bank of Daniel
Meyer was at that time engaged in winding up its affairs,
but Henry Meyer, one of the members of said institution,
took the matter up with the Mercantile Trust Company, re-
questing this latter corporation to act as guardian of the
estate of Julie Grinbaum. The Mercantile Trust Company
consented to so act, whereupon and on January 9, 1913, a
petition on behalf of the Mercantile Trust Company for
such guardianship was filed in the superior court of the
city and county of San Francisco. In view of the fact that
this petition marks the initiation of the proceedings for the
appointment of the Mercantile Trust Company as guardian
of the estate of Julie Grinbaum which are assailed in this

proceeding, some particular reference to its contents should be made. The petition, after alleging the corporate character and qualifications of the petitioner, proceeds to allege "that the above named Julie Grinbaum is a widow over the age of 21 years and at present resides at Baden-Baden, Empire of Germany . . . and has estate within the city and county of San Francisco, said state, and that your petitioner petitions as a friend of said insane person: That the said Julie Grinbaum for more than one month last past has been of unsound mind and wholly incompetent to transact her own business or to properly, or at all care for her own property or estate; That the said Julie Grinbaum was on or about the 10th day of December, 1912, adjudged of unsound mind by the Grossherzoglich Badisches Ministerium des Grossh. Hauses, der Justiz und des Auswartigen, of the Grand Duchy of Baden, Empire of Germany, and has not since said time been restored by any decree of Court to capacity, and ever since said last mentioned date has been, and now is an insane person; That as petitioner is informed and believes, and therefore so alleges, there are no persons within the State of California who are interested in the estate of said Julie Grinbaum, and that the heirs and relatives and next of kin who are interested in said estate are:

| Names: | | Who Reside At: |
|---|---|---|
| Toni Horn, | (A Cousin) | 50 Rue Juste-lipse Brussels, Belgium; |
| Max Goldsmith (A brother in Law) | | Hamburg, Germany; |
| Jane Doe Goldsmith, (A daughter of said Max Goldsmith) True name unknown; | | Hamburg, Germany. |

That it is necessary and for the best interests of the estate that a guardian be appointed by the Court to collect and preserve the estate of said Julie Grinbaum, and to manage said estate."

On the date of filing said petition the said superior court made an order directing notice of said application to be given. This order follows in the main the language of the petition reciting that the said Julie Grinbaum, an insane person, resides at Baden-Baden, Germany, and is without the state of California; "That there are no relatives of said

Julie Grinbaum within said state of California but that the relatives of said insane person reside in the Empire of Germany and are as follows, to wit: (Repeating former names and addresses) and that there are no persons within the State of California who are interested in the estate of said Julie Grinbaum. It is therefore ordered; that notice of said application be issued by the clerk of this court directed to said Toni Horn, Max Goldsmith and Jane Doe Goldsmith, relatives of said insane person, residing in said Empire of Germany, and that true copies of said notice be mailed forthwith to said relatives by depositing in the United States Post Office at said San Francisco, California, true copies of said notice, enclosed in envelopes properly addressed, with the postage prepaid thereon; It is further ordered, that true copies of the said notice of the time and place of the hearing of said application be forthwith served personally at least five (5) days prior to the time fixed herein for the hearing of said petition upon any and all persons, firms, and corporations, which have in their possession, or under their control, any of the property or estate of the said insane person within the said City and County of San Francisco, or the State of California; The hearing of said petition is hereby set for the 27th day of January, 1913, at the hour of 10 o'clock A. M. of said day at the Court-room of Department No. Nine of the above entitled Court.''

On January 13, 1913, the clerk of said court made, issued, and filed the notice of the time and place of the hearing of said application in conformity with the terms of said order, which notice, after stating the title of the court and cause, reads as follows:

''Notice of Time and Place of Hearing of Application.
''To,

> Bank of Daniel Meyer,
> Henry Meyer,
> A. I. Esberg,
> Toni Horn,
> Max Goldsmith,
> Jane Doe Goldsmith:

''Take Notice that Mercantile Trust Company of San Francisco, a corporation, has heretofore filed, in the above entitled Court, its petition to be appointed guardian of the estate of Julie Grinbaum, an insane person;

"That said petition has been set for hearing by said Court on the 27th day of January, 1913, at the hour of 10 o'clock A. M. of said day, at the Court-room of Department No. Nine of the above entitled Court, at which time and place you may appear and show cause, if any you can, why said Mercantile Trust Company of San Francisco should not be appointed such guardian." Thereafter and on January 25, 1913, there were filed with the clerk of said court two affidavits relating to the service of said notice. In one of these affidavits one Henry Melander deposed that he personally served said notice on Henry Meyer and the Bank of Daniel Meyer and that he left a copy of said notice at the place of business of A. I. Esberg, in the city and county of San Francisco, he being then absent from the state, the persons thus served being named in said notice as comprising presumably "the persons, firms and corporations" generally referred to in said order as having "in their possession or under their control any of the property or estate of said insane person within the said city and county of San Francisco or the state of California." The other affidavit was by one G. Selner, who, after reciting generally the terms of said notice and of said order directing that copies of said notice be mailed to the specified relatives of said insane person residing in Germany, deposed "that on the 13th day of January, 1913, the affiant deposited in the United States Post Office in San Francisco, California, true copies of said notice of the time and place of hearing said application securely enclosed in envelopes respectively addressed as follows:

One thereof addressed to Toni Horn, (A cousin)
  50 Rue Juste-lipse, Brussels, Belgium;

One thereof addressed to Max Goldsmith, (A brother in Law)
  Hamburg, Germany; and

One thereof addressed to Jane Doe Goldsmith, (a daughter
  of said Max Goldsmith; true name unknown)
   c/o Max Goldsmith, Germany."

Thereafter and on January 27, 1913, the matter of the application of the Mercantile Trust Company to be appointed guardian of the estate of Julie Grinbaum came on for hearing in said superior court in department nine thereof, and was then and there heard; whereupon the judge of said department of said court made and entered an order appoint-

ing said Mercantile Trust Company to be the guardian of the
estate of Julie Grinbaum, an insane person. The said order
contains the following recitals:

"The petition of Mercantile Trust Company of San Fran-
cisco praying to be appointed the Guardian of the estate of
said Julie Grinbaum, an insane person, coming on regularly
to be heard, upon due proof to the satisfaction of said Court
that notice has been given to the relatives of the said Julie
Grinbaum, residing in the Empire of Germany and that none
reside in this City and County or in the State of California,
and that said insane person resides in and is now in said
Empire of Germany and that all notices have been given as
required by law and as directed by this Court; and it duly
appearing to the Court that said Julie Grinbaum is an insane
person and has estate within the State of California, which
needs the care and attention of some fit and proper person,
which estate is of the value of $200,000.00 or thereabouts."

Letters of guardianship were issued to said Mercantile
Trust Company pursuant to said order, under the authority
of which it has ever since been and still is acting as guard-
ian of the estate of said Julie Grinbaum and has been and
still is in the possession and administration of practically
the whole of her property and estate, together with the rents,
issues, profits, increments, and accumulations thereof.

Before attempting to set forth and pass upon the re-
spective contentions of the petitioner and respondents herein
based upon the foregoing record, it may be well to have in
mind the provisions of the Code of Civil Procedure relating
to proceedings for the appointment of guardians of insane
or incompetent persons who do or who do not reside within
the state of California. Section 1763 of the Code of Civil
Procedure provides for the appointment of guardians for the
person and estate of insane or incompetent persons who re-
side within the state of California having property within
it. It reads as follows:

"When it is represented to the superior court, or a judge
thereof, upon verified petition of any relative or friend, that
any person is insane, or from any cause mentally incompe-
tent to manage his property, such court or judge must cause
a notice to be given to the supposed insane or incompetent
person of the time and place of hearing the case, not less
than five days before the time so appointed, and such per-

son, if able to attend, must be produced on the hearing, provided that when such person is a patient at a state hospital in this state, the certificate of the medical superintendent or acting medical superintendent of such state hospital, to the effect that such patient is unable to attend on the hearing shall be *prima facie* evidence of such fact.''

Section 1793 of the Code of Civil Procedure provides for the appointment of guardians of insane or incompetent persons who reside or are without the state of California. It reads as follows:

''The superior court may appoint a guardian of the person and estate, or either, of a minor, insane or incompetent person, who has no guardian within the state, legally appointed by will, deed or otherwise, and who resides without the state, and has estate within the county or, who, though not having such estate, is within the county, upon petition of any friend of such person or any one interested in his estate in expectancy or otherwise. Before making such appointment, the court must cause notice to be given to all persons interested, in such manner as such court deems reasonable.''

These two sections of the Code of Civil Procedure comprise the law of this state, by compliance with which its courts acquire jurisdiction to appoint guardians of the persons or estates of alleged insane or incompetent persons who do or who do not reside within the state of California and who have property rights or interests therein.

It is to be observed that each of these two sections of the code provides for some form of notice to be given to the individual whose personal liberty or whose property rights or interests are to be affected by such guardianship. Section 1793 of said code provides that ''before making such appointment the court must cause notice to be given to all persons interested in such manner as such court deems reasonable.'' Section 1763 of said code provides that ''the Court or judge must cause a notice to be given to the supposed insane or incompetent person of the time and place of hearing the case,'' and further provides that ''such person, if able to attend, must be produced on the hearing.''

[1] The requirement of these sections of the Code of Civil Procedure that notice in some form and of some manner of service must be given to the individual alleged to be an insane or incompetent person before the courts can acquire

jurisdiction to appoint guardians over their persons or estates does not depend for its sanction upon the express provisions of either section of the code. It rests upon the fundamental doctrine, as old as Magna Carta, that no person can be deprived of life, liberty, or property without due process of law; and it has accordingly been held in several of the states that even in the absence of express provisions in their laws relating to guardianship, requiring notice to be given to insane or incompetent persons of impending guardianships over their persons or estates, such notice must be given or such proceedings shall be void. In the case of *McKinstry* v. *Dewey,* 192 Iowa, 753 [23 A. L. R. 587, 185 N. W. 565], the decisions of these several jurisdictions are extensively reviewed and are shown to uniformly support the conclusion that even without express statutory requirements as to notice the personal liberty or property rights of a person alleged to be insane or incompetent cannot be invaded or impaired by the appointment of a guardianship over his person or estate without the giving to him of some form of notice sufficient to satisfy the constitutional requirement as to due process of law. It is not seriously contended by the respondents herein that either in the presence or absence of the provisions of the foregoing sections of the Code of Civil Procedure respecting notice any appointment of a guardian of either the person or property of the petitioner herein could have been validily made without some sufficient form of notice to her of such proceedings. The primary question before this court, therefore, is as to whether, upon the face of the foregoing proceedings, this court, as the petitioner insists, is compelled to the conclusion that no notice whatever was given to the petitioner herein of the application of the Mercantile Trust Company to have her adjudged to be insane or incompetent and to have itself appointed guardian of her estate or of the proceedings taken thereunder resulting in such adjudication and such guardianship; and hence that such proceedings and the orders therein made were and are wholly void as beyond the jurisdiction of said court; or whether, as the respondents herein contend, this court will presume upon the face of said proceedings, read as a whole, that some sufficient form of notice of such proceedings and of the order or orders sought to be made therein was given to said petitioner, and hence that such proceedings and the

order or orders adjudging said petitioner to have been incompetent or insane and appointing the said Mercantile Trust Company guardian of her estate were and are valid as within the proper exercise of the jurisdiction of said court. To this primary inquiry we therefore address ourselves. In so doing we do not deem it necessary to determine whether proceedings for the appointment of guardians of the estates of insane or incompetent persons are proceedings *in personam* or *in rem;* for while it is true that if such proceedings are in the nature of proceedings *in personam,* personal service of notice of such proceedings and of the relief sought therein would be required, while if *in rem* notice by substituted service, as by mail or posting or publication, might suffice, the question here is not as to the form or sufficiency of the notice, but is as to whether or not any notice whatsoever was given, or is to be presumed to have been given; for if the presumption is to be indulged in at all it must be held to go the full length in establishing the sufficiency of the notice thus presumed to have been given. It would seem to be conceded by the respective parties hereto that the proceedings which are assailed herein were taken under the provisions of section 1793 of the Code of Civil Procedure relating to the appointment of guardians of the person and estate of nonresident persons. The petition of the Mercantile Trust Company alleged that Julie Grinbaum "at present resides at Baden-Baden, Germany"; and further alleged "that as petitioner is informed and believes and therefore so alleges there are no persons within the state of California who are interested in the estate of said Julie Grinbaum." The order of the court fixing the time and place for the hearing upon said petition and directing to whom and in what manner the notice of said hearing should be given repeats in its recitals the foregoing recitals of the petition. Without attempting to precisely define the meaning of the phrase in said section 1793 of the Code of Civil Procedure reading "who resides without the state," it will be assumed, in view of the admission of the parties hereto and of the form and phrasing of the aforesaid petition and order that said proceeding for the appointment of a guardian of the estate of Julie Grinbaum comes properly within the scope of the provisions of said last-named section of the code; and that the provision therein that "before making such appointment

the court must cause notice to be given to all persons inter-
ested in such manner as the court deems reasonable,'' applies
to said proceeding.  This assumption is in harmony with
the authorities of both this and other states having similar
statutes, and is in keeping with the constitutional require-
ment that no person shall be deprived of life, liberty, or
property without such notice and opportunity to be heard
as shall be held to constitute due process of law.  (*Estate of
Eikerenkotter,* 126 Cal. 55 [58 Pac. 370]; *Estate of Schul-
meyer,* 171 Cal. 344 [153 Pac. 233]; *McGee* v. *Hayes,* 127
Cal. 336 [78 Am. St. Rep. 57, 59 Pac. 767]; *Matter of Lam-
bert,* 134 Cal. 632 [86 Am. St. Rep. 296, 55 L. R. A. 856,
66 Pac. 851]; *Mosby* v. *Gisborn,* 17 Utah, 257 [54 Pac. 121];
*McKinstry* v. *Dewey,* 192 Iowa, 753 [23 A. L. R. 587, 185
N. W. 565]; *Paine* v. *Folsom,* 107 Me. 337 [78 Atl. 378];
*Evans* v. *Johnson,* 39 W. Va. 299 [45 Am. St. Rep. 912,
23 L. R. A. 737, 19 S. E. 623]; *Hathaway* v. *Clark,* 225
Pick. (Mass.) 490.)

At the threshold of our consideration of the record before
us in the matter of the application of the Mercantile Trust
Company for the appointment of itself as guardian of the
estate of Julie Grinbaum it is to be noted that under the
express provision of section 1793 of the Code of Civil Pro-
cedure last above quoted whatever notice is to be given of the
time and place of the hearing upon said application ''to all
persons interested'' must be such notice as is ordered by
the court as distinguished from such notices in certain simi-
lar proceedings as are expressly provided for by statute and
as may be given without any special order of the court but
by the clerk or other officer thereof pursuant to statutory
direction.  In the proceeding under present review there
must be a court order directing the giving of notice to all
persons interested and specifying in what reasonable man-
ner such notice shall be given.  It is therefore essential to a
proper consideration of the sufficiency of the proceedings
under review to scrutinize the contents of the order of the
court touching the notice to be given of the hearing upon
said application.  An inspection of said order discloses that
there are two specified sets of persons to whom notice of the
hearing upon said application is directed to be given.  These
are (1) Toni Horn, a cousin of the alleged insane person,
who resides at 50 Rue Justi-lipse, Brussels, Belgium; Max

Goldsmith, a brother-in-law, who resides at Hamburg, Germany, and Jane Doe Goldsmith, a daughter of said Max Goldsmith, who also resides at Hamburg, Germany. (2) "Any and all persons, firms and corporations which have in their possession, or under their control, any of the property or estate of the said insane person within the city and county of San Francisco or the state of California." It thus affirmatively appears upon the face of said order that no notice whatever is directed to be given the alleged insane person, either under the particular name of Julie Grinbaum or under the general designation of a person interested in her estate.

We next come to consider the notice which, as appears from the record before us, was issued by the clerk of said court pursuant to the foregoing order. It gives the title of the court and cause and then proceeds to designate somewhat more particularly than was done in said order the persons to whom said notice is directed. They are "Bank of Daniel Meyer, Henry Meyer, A. I. Esberg, Toni Horn, Max Goldsmith, Jane Doe Goldsmith." It then proceeds to state: "Take notice that Mercantile Trust Company of San Francisco, a corporation, has heretofore filed in the above-entitled court its petition to be appointed guardian of the Estate of Julie Grinbaum, an insane person." It then proceeds to state the time and place of hearing in said court upon said petition in conformity with the terms of said order and notifies said designated persons to "appear and show cause if any you can, why said Mercantile Trust Company should not be appointed such guardian." It thus appears upon the face of said notice what particular persons are cited to appear at the hearing upon said application for guardianship and it thus affirmatively appears that Julie Grinbaum, neither by name nor by any general inclusion, is to be notified to thus appear.

We come next in order to the service of said notice, to the manner thereof, and to the persons upon whom the service of the same was made pursuant to the directions of said order and the terms of said notice. There are two affidavits of service and no more embraced in the record before us. One of these relates to the service of said notice upon the first three persons named in said notice, viz.: Bank of Daniel Meyer, Henry Meyer, and A. I. Esberg. As to the

first two of these the affiant deposes that the notice was personal, by delivering to Henry Meyer, in his personal capacity, a copy of said notice, and by delivering to Henry Meyer as vice-president of the Bank of Daniel Meyer, a corporation, a copy of said notice. As to the service upon A. I. Esberg the affiant states that service of said notice was made by leaving a copy thereof at his place of business, he being absent therefrom and from said city and state. The second affidavit of service relates to the fact and manner of service upon the other three persons specifically designated in both said order and said notice, viz.: Toni Horn, Max Goldsmith, and Jane Doe Goldsmith, and shows the service of said notice by mailing copies of said notice to each of said persons at their respective places of residence in Europe. Neither of said affidavits of service refers directly or indirectly to any service of said notice upon any person or persons other than those whose names are specifically enumerated therein.

On January 27, 1913, the said matter of the application of Mercantile Trust Company to be appointed guardian of the estate of Julie Grinbaum came on for hearing pursuant to the aforesaid order and notice with the affidavits of service thereof, and was heard by said superior court upon said day. Upon such hearing the said court made its order appointing said Mercantile Trust Company guardian of said estate, which order reads as follows:

"It is hereby ordered, That said Mercantile Trust Company be and it is hereby appointed Guardian of the estate of said Julie Grinbaum, an insane person, and that letters of guardianship of the estate of said Julie Grinbaum, an insane person, be issued to said Mercantile Trust Company, no bond being required by law, said Mercantile Trust Company is appointed without bonds."

Thereupon and on said twenty-seventh day of January, 1913, pursuant to said order, the clerk of said court issued letters of guardianship of said estate to Mercantile Trust Company, which thereafter duly qualified as such guardian and took possession of the said properties and estate of Julie Grinbaum which were within the state of California, and has ever since been and still is in the possession and administration of the same as such guardian of said estate under and by virtue of its appointment as such by and through the foregoing proceedings and not otherwise.

It is the contention of the petitioner herein that the fore-going proceedings as produced before this court in the manner above set forth show upon the face thereof that the said superior court in which the same were instituted and pending never acquired and did not have jurisdiction to make the aforesaid order appointing said Mercantile Trust Company guardian of the said estate of Julie Grinbaum, for the reason that no notice of such proceedings or of the hearing thereon was ever served upon said Julie Grinbaum, as required by law or at all; that a writ of review is the petitioner's proper and only adequate remedy and that for the reason stated this court should declare void and should vacate and annul the said order of said superior court appointing said Mercantile Trust Company guardian of her said estate.

The respondents herein, while apparently conceding that some sort of notice to an alleged insane or incompetent person residing or being outside of the state of California is required to be given under the express provisions of section 1793 of the Code of Civil Procedure before the court can acquire jurisdiction to appoint a guardian of the estate of such person, still contend that the presumption as to the regularity of the proceedings of courts of record having jurisdiction over such proceedings can be invoked and applied in the instant case to eke out the insufficiency of the record herein due to its silence as to whether or not the alleged insane person was duly served with such notice; and the respondents further and more particularly contend that this presumption is not only aided but is fully sustained and established by the recitals in the order making such appointment, referring to the said petition as ''coming on regularly to be heard'' and reciting ''that all notices have been given as required by law and as directed by this court.'' In support of the respondents' contention that they are entitled to the benefit of the presumption as to the regularity of the proceedings for the appointment of said guardian as shown by the record under review, they cite and copiously quote from the leading case of *Hahn* v. *Kelly,* 34 Cal. 391 [94 Am. Dec. 742], and from certain other cases from this and other jurisdictions which have followed and applied its doctrine as fully upholding their aforesaid contention. The petitioner, on the other hand, insists, and we think correctly, that the

case of *Hahn* v. *Kelly, supra,* far from upholding the respondents' contention, expressly repudiates it and sustains the petitioner's contention, that the presumption relied on by the respondents herein cannot be invoked or relied upon under the state of the record before us. The case of *Hahn* v. *Kelly, supra,* arose out of the case of *Hawes* v. *Jones,* which was an action in equity for the foreclosure of a mortgage·upon property in this state of a nonresident and absent mortgagor, upon whom personal service could not be had. The case was concededly one wherein a judgment *in rem* affecting only the property involved could be obtained upon substituted service by publication of the summons therein. An order for such publication in a designated newspaper was duly made; an affidavit of publication was in due time presented, which showed the publication of the process for the requisite period but which affidavit failed to state whether the person making it was the printer, foreman or principal clerk of said newspaper. The record was silent as to the qualification of the affiant or as to whether or not upon the hearing other proof was presented as to the regularity of the publication or as to the qualifications of the maker of the affidavit. The judgment recited that service had been made "according to law and the order of said court." In the later case of *Hahn* v. *Kelly,* involving the same property, and wherein the said judgment of foreclosure was assailed as void by reason of said defective affidavit of service of the process upon which jurisdiction to render the judgment depended, this court held in an exhaustive opinion that upon the state of the record in that case and of the recitals of the judgment, that "if the record is silent as to what was done in respect to some material matter we will presume that what ought to have been done was done." The court supports this brief statement of the principle governing the application of the rule as to presumptions in support of a judgment with an amplitude both of reasoning and of illustration which abundantly serves to differentiate the case of *Hahn* v. *Kelly* from the case at bar. For example, it follows immediately the foregoing statement of the principle with these words: "But where the record states what was done it will not be presumed that something different was done. A want of jurisdiction affirmatively appears on the face of the record whenever what was done is stated and which having

been done was not sufficient in law to give the court jurisdiction." Again, the court by way of illustration says: "Suppose in a case of attempted personal service the officer should return that he had served the summons upon A. B. the son of the defendant, by delivering to him personally a copy and also a copy of the complaint, and the remainder of the record is silent upon the subject of service, could we presume, in the face of such a record, that he served it upon the defendant also? Undoubtedly not. There would be a want of jurisdiction upon the face of the record within the rule in hand and the judgment would be declared a nullity whenever and wherever presented in support of a legal claim or right. We consider the true rule to be that legal presumptions do not come to the aid of the record except as to acts or facts touching which the record is silent. Where the record is silent as to what was done, it will be presumed that what ought to have been done was not only done, but rightly done; but when the record states what was done, it will not be presumed that something different was done. If the record merely shows that the summons was served on the son of the defendant, it will not be presumed that it was served on the defendant. If the affidavit of the printer shows that the summons was published one month, it will not be presumed that it was published three." A very good illustration applying the foregoing principles and showing the difference between the facts of the case of *Hahn* v. *Kelly,* and those of the case at bar would be the following: Suppose that in that early case the record had affirmatively shown that no order directing the service by publication of the summons upon the defendant had ever been made? Would the court have presumed from the recitals of the judgment that such order had been entered and that such service had been made? In the case at bar the record affirmatively shows that the order for service of notice specified those persons upon whom such service was to be made and that the alleged insane person was not among the list of those thus directed to be served. This amounts to an affirmative showing that there existed no order for service of notice upon such insane person. Could the court presume in the face of this state of the record that an order for service of notice upon Julie Grinbaum was made? If not, then whatever service was attempted to be made would be futile

in the absence of an order directing such service to be made. But the record in this case goes further in differentiating it, not only from the state of facts shown in *Hahn* v. *Kelly,* but also in distinguishing it from every other case upon which the respondents rely in support of their contention upon the point at present under review. The notice issued pursuant to the order entered in the instant case specifies with even greater particularity than the order itself the persons upon whom service thereof is to be made. The alleged insane person, though the person most interested in said proceeding, is not included in that specification. Could it be presumed that the service of said notice was to be made upon one whose name was thus excluded from the list of those upon whom such service was to be made? Again, the affidavits of service of said notice contained in this record show affirmatively the persons upon whom the service of such notice was made, and the alleged insane person is not among their number. Does not the foregoing illustration in *Hahn* v. *Kelly* have exact application to this state of the record?

[2] When the return of service thus shows affirmatively the names of those persons upon whom such service has been made, can the court presume that service has also been made upon one whose name is neither included in the order, the notice or the affidavits of service thereof? Undoubtedly not. The case of *Alderson* v. *Bell,* 9 Cal. 315, also cited and relied upon by the respondents, resembles the case of *Hahn* v. *Kelly* as to its facts and is subject to the same differentiation from the facts of the case at bar and the principles to be applied thereto. On the other hand, this court has had occasion in numerous later cases to apply and to distinguish the doctrine announced in *Hahn* v. *Kelly, supra,* among which are the cases of *Belcher* v. *Chambers,* 53 Cal. 639, *Smith* v. *Los Angeles Co.,* 98 Cal. 210 [33 Pac. 53]; *Latta* v. *Tutton,* 122 Cal. 279 [68 Am. St. Rep. 30, 54 Pac. 844], and *Johnston* v. *Southern Pac. Co.,* 150 Cal. 535 [11 Ann. Cas. 841, 89 Pac. 348]. In the case last cited the court gives a more direct application to the rule announced in these earlier cases when it says: ''There is, however, a well-defined limit to the appellate tribunal's power in indulging in such presumptions. It can indulge in no presumption which does violence to the facts as presented by the record of the inferior court, and while it is true that an

order of a court of general jurisdiction will be treated as void only in the event that its invalidity appears upon the face of the record, . . . the rule in this court has been well settled that this does not mean that the record must contain a direct statement to the effect that something which must have been done in order to give the court jurisdiction was not done; but means that want of jurisdiction appears whenever what was actually done is stated and this which was done is not sufficient in law to confer jurisdiction. Therefore when the record states the evidence or makes an averment with reference to a jurisdictional fact it will be understood to speak the truth on that point and it will not be presumed that there was other or different evidence respecting the fact or that the fact was otherwise than is averred." (Citing *Galpin* v. *Page,* 18 Wall. (U. S.) 350 [21 L. Ed. 959, see, also, Rose's U. S. Notes], and other cases.)

[3] The respondents, however, insist that the recitals contained in the order of the court appointing the Mercantile Trust Company guardian of the estate of Julie Grinbaum are sufficient to establish due service of process upon her so as to sustain the jurisdiction of the court to make said order. These recitals, as we have seen, are (1) "The petition of the Mercantile Trust Company of San Francisco to be appointed the guardian of the Estate of said Julie Grinbaum, an insane person, coming on regularly to be heard," and (2) "and that all notices have been given as required by law and as directed by this court." It is to be noted that these two recitals in said order are connected and joined together by the declaration therein immediately following the first of said recitals and immediately preceding the second of them, reading as follows: "Upon due proof to the satisfaction of said court that notice has been given to the relatives of said Julie Grinbaum residing in the Empire of Germany and that none reside in this City and County or in the state of California and that said insane person resides and is now in said Empire of Germany." As to said first recital it thus appears upon the face of the order what notice and proof of service formed the basis of said recital, and upon the foregoing authorities it will not be presumed that any other notice than that thus affirmatively stated is covered by said recital; while as to said second recital not only does the same reasoning apply but the recital itself

grammatically construed means no more than that whatever notices were given, were given in the manner required by law and as directed by the court. **[4]** That the foregoing is the utmost force and effect to be given to either of said recitals is further made plain by the authorities which deal with the weight to be accorded to recitals in orders, judgments, and decrees and which uniformly hold that it is only in the absence of anything to the contrary in the record that the recital that the matter "came on regularly to be heard" must be presumed to be true. (*Estate of Schulmeyer,* 171 Cal. 341 [153 Pac. 233]; *Estate of Espinosa,* 179 Cal. 189 [175 Pac. 896]; *Settlemier* v. *Sullivan,* 97 U. S. 444 [24 L. Ed. 1110, see, also, Rose's U. S. Notes]; *Latta* v. *Tutton, supra; Hahn* v. *Kelly, supra.*) We are satisfied from the foregoing considerations that the order of the said superior court dated January 27, 1913, appointing the Mercantile Trust Company guardian of the estate of said Julie Grinbaum was void for want of jurisdiction appearing upon the face of the proceedings in said court leading up to and including said order sought to be reviewed herein.

The respondents herein, however, contend that, conceding said order to have been void at the date thereof for want of jurisdiction, the petitioner herein should not at this time be granted the relief prayed for in her petition herein for the following reasons: First, that the petitioner herein has waived her right to make this application for a writ of review (a) by laches and lapse of time; (b) by her acts and conduct since the making of said order, amounting to a consent thereto, and particularly by her acts and conduct since her return to San Francisco in August, 1921, including her application for a restoration to capacity presented to the court in which the aforesaid proceedings were pending on or about June 26, 1923, and which said proceedings for restoration are still pending therein, and by which acts and conduct the respondents also contend the petitioner herein is now estopped to maintain the present proceeding. **[5]** As to the petitioner's waiver of her right to a writ of *certiorari* for the purpose of having said proceedings reviewed and said order annulled for want of jurisdiction a sufficient answer to the respondents' foregoing contention in that regard is to be found in the provisions of section 40 of the Civil Code, which reads as follows:

"Sec. 40. After his incapacity has been judicially determined a person of insane mind can make no conveyance, or other contract nor delegate any power or waive any right until his restoration to capacity."

During all of the years which have elapsed since the date of the making of said order and even down to the present moment, Julie Grinbaum has been the subject of judicial determination that she was an insane or incompetent person. Not only was she so adjudged by the terms and effect of said order, but also by the judicial determination of the German tribunal, which, in May, 1913, adjudged her insane; which adjudication has never been set aside or revoked so far as the record in the present proceeding discloses. The instant proceeding is being conducted through and by means of a guardian *ad litem* appointed by this court upon the presentation of the aforesaid proceedings of both the American and German courts adjudging her to be insane. It is impossible to conceive how any act or failure to act, or any conduct on the part of a person thus subject to the disqualification of adjudged insanity could be held to operate as either a waiver or estoppel against the assertion of the right to have an order of a court adjudging her insane or undertaking to establish a guardianship over either her person or estate, vacated for defects of jurisdiction appearing upon the face of the proceedings which form the basis of such order. We are cited by the respondents to no decision of any court which goes so far, or which applies the doctrine of either waiver or estoppel to persons who are laboring under an unrevoked judicial determination of their disability.

Second: The respondents contend that inasmuch as a writ of *certiorari* is not a writ of right but is an extraordinary remedy the granting of or refusal to grant which lies in the sound discretion of the court to which application therefor is made, this court ought not to issue such writ or set aside said order creating such guardianship, conceding said order to have been void for want of notice to the petitioner herein, if the said petitioner was in fact insane at the time of the making of said order, and if the condition of her properties and estate was such that an imperative necessity existed for the appointment of a guardian over her estate at said time, and if the guardian was otherwise a suitable, acceptable, and properly qualified person, and if the administration of the

petitioner's said estate under said guardianship had during the several years of its continuance been beneficial to the said insane person and to her said estate; and if no substantial injustice has been done to her or her estate through the existence or exercise of said guardianship; and if confusion, litigation, and prejudice to third persons would result from the annulment of the initial order upon which such guardianship and all subsequent proceedings thereunder rests. [6] In entering upon a discussion of this phase of the issue before us it is to be taken as true that the granting or refusal of a writ of review is a matter which rests in the sound discretion of the court to which application for such writ is made. The authorities fully sustain this view. (4 Cal. Jur. 1061, and cases cited.) But conceding this to be true, it is not to be denied that the making and execution of a judicial order or decree declaring an individual to be insane and placing the entire property and estate of such individual within the custody and control of others are matters of the gravest concern, affecting, as they do, intimately and immediately, those rights of the individual often, and not improperly, termed "sacred" to the full exercise and enjoyment of life, liberty, and property. It is for this reason chiefly that the express provisions of our statutes relating to guardianship require that notice of proceedings for the creation of such guardianship shall be given to the person having property within the jurisdiction of the court and who in such proceedings is alleged to be incompetent or insane. The strictitude of our statutory requirements in that regard is best illustrated by the provisions of section 1763 of the Code of Civil Procedure relating to the guardianship over the person or property of alleged insane or incompetent persons who are within this state. Said section requires not only personal service of notice of the pendency of such proceedings and of the time and place of the hearing thereon to be given to the alleged insane or incompetent person, but further requires that such person must be produced at such hearing unless he is at the time a patient at a state hospital and is shown by the certificate of the superintendent thereof to be unable to attend. The reason for this strictitude lies in the fact that the issue of primary importance to be determined before any order can be made in the premises is as to whether or not the persons whose personal and property

rights are to be thus affected are or are not incompetent or insane. That a similar strictitude cannot be practically enforced in the case of alleged insane or incompetent persons who reside without or are absent from the state lies in the nature of things, but does not in any degree diminish the importance of giving the notice required by section 1793 of the Code of Civil Procedure. In the case of *Evans* v. *Johnson,* 39 W. Va. 299 [45 Am. St. Rep. 912, 23 L. R. A. 737, 19 S. E. 623], this proposition is aptly and forcibly stated:

"It lies at the foundation of justice in all legal proceedings that the person to be affected have notice of such proceedings. As such an appointment takes from the person the possession and control of his property and even his freedom of person, and commits his property, his person, his liberty to another, stamps him with the stigma of insanity, and degrades him in public estimation, no more important order touching a man can be made, short of conviction of infamous crime. Will it be said in answer to this, that he is insane, and that notice to an insane man will do him no good? The reply is that his insanity is the very question to be tried, and he is the only party interested to the issue. In many cases, if notice be given him, he will be prompt to attend and in person be the unanswerable witness of his sanity. In some cases, if notice be not given him, those interested in using his property or robbing him of it will effectuate a corrupt plan. Almost as well might we convict a man of crime without notice."

In the entire absence of any notice to the person of all others the most interested in the proceedings in which these vital issues are to be determined, and in the consequent want of jurisdiction in the court entertaining such proceedings to make any order whatever in the premises, it would seem clear that this court ought not to prejudge, under the procedure of a writ of review that the order thus assailed was imperatively or at all necessary to the welfare of the person most affected by it or that the subsequent proceedings under the guise of the guardianship created thereby were beneficial to such person or to his property; since as to all such matters such person has never had his or her day in court. [7] In the instant proceeding it is not to be forgotten that Julie Grinbaum was at the time of the making of the order complained of herein detained in a hospital for the mentally

afflicted in a distant foreign land and that she continued to be so detained for the seven years or more which followed the making of said order; that the record herein discloses that during that entire period she had not a single relative in the state of California who might have been interested in the welfare of her property interests therein, or who might have been notified of proceedings from time to time taken and of orders from time to time made in the course of said guardianship; that, so far as the record herein discloses, no such legal notice as the law requires was ever given either to Julie Grinbaum or to any relative of hers, interested in her welfare, of any of the subsequent proceedings had or orders made in the course of said guardianship during all these years; that it was not until within a brief year before the institution of the instant proceeding that Julie Grinbaum came or was brought within the boundaries of this state or the jurisdiction of its courts; and that ever since her return to this state in 1921 she has been and still is subject to the legal disability created by said order judicially determining her to have been insane at the date thereof and to have continued so to be while said order remains in force and effect. Can it be said with propriety under these circumstances that this court would be exercising a proper discretion in denying to this petitioner, for the reasons urged by the respondents, the right by writ of *certiorari* to have annulled an order void upon its face for absolute lack of jurisdiction in the court to make it, if the petitioner is otherwise entitled to such writ? We think not.

[8] As to the contention of the respondents that confusion, litigation, and prejudice to third persons might result from the annulment of said order, it may be said that so far as the record herein discloses no rights of third persons are involved in said proceedings or would be injuriously affected by the annulment of said order. As to possible litigation, it may be noted that it is to such very litigation that this court is asked by respondents to relegate this petitioner through their insistence that she should seek her relief in a court of equity rather than by means of this writ; while as to any confusion in respect to the petitioner's properties or affairs or in respect to the administration thereof during the past years of said guardianship it would seem that the mere fact that the guardian might be required to

render an accounting of its stewardship while acting as such under a void order of appointment should not of itself be sufficient to justify this court in refusing to annul said order, since equity will always intervene to protect and uphold the acts and transactions of trustees *de facto* when done in good faith and when the same inure to the benefit of the person or estate of the ward. (Perry on Trusts, 6th ed., sec. 910; *Jessup* v. *Jessup,* 17 Ind. App. 177 [46 N. E. 553]; *Curran* v. Abbott, 141 Ind. 492 [50 Am. St. Rep. 337, 40 N. E. 1091]; *Jones* v. *Dawson,* 19 Ala. 672; *Lowe* v. *Morris,* 13 Ga. 165; *Railroad Co.* v. *Miller,* 47 Vt. 146; *McElhenny's Appeal,* 46 Pa. St. 347; *Worrall* v. *Harford,* 8 Ves. 8.)

[9] We will next proceed to a discussion of the further contention of the respondents herein to the effect that said petitioner has a plain, speedy, and adequate remedy in the ordinary course of law and hence is not entitled to the relief sought herein. Under this head the respondents insist that the petitioner has had four separate, distinct, and adequate remedies against the making, operation, and effect of said order, viz.: (1) By appeal; (2) by motion in the court making said order to set the same aside; (3) by an action in equity to declare said order void, and (4) by a petition for restoration to capacity. As to the first of these remedies, it is conceded that the time has long gone by for its exercise, and it is obvious from the state of this record that the petitioner neither had nor was in any condition to receive notice of the making of such order or of the defects in the same during the statutory time when such appeal might have been taken. As to the petitioner's second suggested remedy, viz., that of a motion to set aside such void order in the court making the same; in response to this suggestion it may be stated that it has never been the practice to require a party injuriously affected by a judgment or order of a court, which court had never acquired jurisdiction over either his person or property to make the same, to first apply to the court making said order to have the same vacated; nor should it be so in reason, since to apply such a rule would be to require such a party to submit himself to the jurisdiction of the court making such void order and thus commit himself thenceforward to the tender mercy of the court making the same. We are cited to no authority which goes so far as to hold that a person having a clear right to make

a direct attack by *certiorari* upon a judgment or order of
a judicial tribunal upon the ground of lack of jurisdiction
must first seek relief from such judgment or order in the
court which was without jurisdiction to make or enter the
same.    The cases of *Rue* v. *Quinn,* 137 Cal. 651 [66 Pac.
216, 70 Pac. 732], *People* v. *Davis,* 143 Cal. 673 [77 Pac.
651], and *Benning* v. *Superior Court,* 34 Cal. App. 296 [167
Pac. 291], go no further than to hold that a party affected
by an order of a court, void upon its face may apply to
the court making the same, to have it vacated, but do not
hold that such party is obliged to do so before applying for
a writ of review.    On the other hand, in the case of *Have-
meyer* v. *Superior Court,* 84 Cal. 327 [18 Am. St. Rep. 192,
10 L. R. A. 627, 24 Pac. 121], which arose on application
for a writ of prohibition, this court, after an exhaustive con-
sideration of the subject, said (page 405): "If a want of
jurisdiction is apparent on the face of the proceeding in the
lower court, no plea or preliminary objection *is necessary*
before suing out the writ of prohibition."    This we think to
be the true and reasonable rule applicable to cases of this
character.

[10]    The respondents' next contention is that the peti-
tioner has a plain, speedy, and adequate remedy by applica-
tion for restoration to capacity under the provisions of sec-
tion 1766 of the Code of Civil Procedure; but a moment's
reflection will serve to show that this is no remedy at all for
the matter complained of in this proceeding, since proceed-
ings under that section of the code do not assail the validity
of the original proceedings and order declaring the peti-
tioner to be insane, but, on the contrary, admit, in so far as
the party applying for restoration to capacity, can admit,
the validity of such proceedings.    Nor does such an applica-
tion in any way involve an inquiry into the validity of the
order creating a guardianship over the property or estate
of the petitioner and hence could not determine the main
issue presented in the instant proceeding.

[11]    The respondents finally contend that the petitioner
has a plain, speedy, and adequate remedy in a court of
equity in an action to declare said order void.    In the case
of *Consolidated Adjustment Co. etc.* v. *Superior Court,* 189
Cal. 92 [207 Pac. 552], Mr. Chief Justice Shaw, referring
to the issuance of extraordinary writs in cases where inferior

tribunals have attempted to proceed in causes over which
they have no jurisdiction, aptly says: "The question whether
or not there is a plain, speedy and adequate remedy in
such cases is a question of fact depending upon the circum-
stances of the particular case." (See, also, *Davis* v. *Superior
Court,* 184 Cal. 691 [195 Pac. 390].) The circumstances
of this particular case, as shown by the record before us,
disclose that Julie Grinbaum, the petitioner herein, is now
of the advanced age of seventy-five years; that she is in
delicate health physically and in a more or less enfeebled
mental state; that during most of her life she has been a
citizen and resident of San Francisco; that about thirteen
years ago she was deprived of her husband's companionship
and support by his sudden death while they were traveling in
foreign lands; that under the shock of that loss she became
morbid and melancholy to a degree which deprived her of all
interest in the ordinary affairs of life and which presently
rendered her the proper subject of internment in hospitals
devoted to the care of those mentally afflicted or enfeebled,
if not actually incompetent or insane; that for seven years
she was thus interned under the immediate custody and care
of guardians and of physicians who were not only not related
to her by ties of blood, but who had been strangers to her
prior to her said affliction. During that entire period the
administration of her properties and estate in California
proceeded under the guardianship of the Mercantile Trust
Company, with which institution she had never theretofore
had any business connection or relation and without any
actual participation by her therein, and without any form of
legal notice or actual or comprehending knowledge on her
part, so far as this record discloses, of the various proceed-
ings, reports, hearings, and orders had and made therein.
In the year 1921, through the persistent efforts of her near-
est relatives she was enabled to be freed from such detention
to return to the city of San Francisco, which had always
been the place of her legal residence and home and where she
has since continued to be. What may be the actual state of
her bodily health or mental powers at present is beyond the
scope of the instant inquiry, but it is reasonably certain
that at most she has left but few remaining years of her
already prolonged and too much troubled life. To relegate
her to a suit in equity against this guardian of her estate to

obtain the relief which she seeks by this direct proceeding would but mean to relegate her to a litigation which would in all reasonable probability outlast her life, and during the continuance of which she would not only be under the ban of the judicial determination of her incapacity which said order creates, but would also have her property and affairs administered by a guardian whose appointment, as such, she was assailing as void for want of original jurisdiction in the court creating the same. In such suit in equity the primary question to be determined would be the question of law as to the validity upon its face of the proceedings for the appointment of such guardian; but this question would necessarily in such action be involved in the other equitable considerations presentable in such a case under the well-known rule that when equity lays hold of any matter of equitable cognizance it will do so to the full extent of affording complete equitable relief to the parties before it. This would of necessity involve a complete accounting between the parties before the entry of a final decree, and it is fairly to be apprehended from the attitude and briefs of respective counsel herein that such accounting would involve an extended inquiry and a prolonged, if not acrimonious, litigation. It is to be noted in this connection that the parties interested in said guardianship proceeding are not adversary parties in the ordinary sense of that term. The Mercantile Trust Company as guardian of the estate of Julie Grinbaum has no interest in her properties or estate in any other capacity than as her trustee, and has no right to be perpetuated in the possession and control of her said properties or estate except upon the assumption that she has been judicially determined to be incompetent or insane by a valid order of the court, which, after such determination, appointed it to be and act as guardian of her said estate. Its highest duty as such guardian is to its ward and in relation to both her personal welfare and her property rights it can have no adverse or selfish purpose or interest to subserve; nor should it be heard to urge either that removal of its said ward from the shadow of an alleged adjudication of insanity, if such removal is otherwise proper, shall be delayed, nor that its possession and control òf her property shall be perpetuated through its insistence upon slower or more involved legal processes to gain relief than those which the

ward herself, or her immediate relatives and advisers, have
seen fit to select.    Under the foregoing circumstances the language
of this court in the case of *Davis* v. *Superior Court,*
184 Cal. 691 [195 Pac. 390], while applied to a different
state of facts, would seem to have application here: ''In
view of the fact that the superior court was then and ever
since has been without power or jurisdiction to proceed further
in the action and that further proceedings of any kind,
except to again dismiss the action would be void, we are
disposed to grant the writ rather than put the parties to
further vexation and useless expense to prosecute it.    The
question is largely one of discretion and we deem it the better
policy to terminate the proceedings forthwith.

The order is annulled.

Lennon, J., Kerrigan, J., Lawlor, J., Seawell, J., and
Waste, J., concurred.

WILBUR, C. J., Dissenting.—I dissent.    As to the question
of notice and the effect of the failure to make substituted service
upon Mrs. Grinbaum of the application for letters of
guardianship, I am in doubt, and as the majority of my associates
have arrived at a conclusion, I do not desire to further
delay the filing of an opinion in order to make the necessary
research to definitely determine that question, nor do I think
that necessary in view of my conclusion as to the duty of this
court in the premises in the exercise of a sound discretion
in the granting or withholding of writs of review.    The
original petition filed in this matter was presented by Mrs.
Grinbaum, and upon that petition an order to show cause
was issued.    Upon the return day the respondent called
attention to the fact that the petition showed on its face
that Mrs. Grinbaum was under legal disability owing to
the adjudication of the German court, and that although
she might have presented a petition in this matter in her
own right upon the theory that the adjudication of the California
court was void for lack of jurisdiction, she was, notwithstanding
that proposition, under legal disability owing
to the German decree, which was still in full force and effect.
Thereupon, upon the suggestion of the attorney who had
presented her petition, he was appointed guardian *ad litem*
to present the matters alleged in her petition.    At the time

of the issuance of the order to show cause upon the petition of Mrs. Grinbaum we had before us two original proceedings instituted by her relating to her proceeding for restoration to capacity then pending before the department of the superior court in which the guardianship proceedings were pending. One of these proceedings was an application for writ of prohibition to prohibit the judge of that department from proceeding with the trial of the issues upon the application for restoration to capacity, and the other was a *mandamus* proceeding to compel him to issue certain commissions for the taking of depositions. It was urged upon us as a reason for entertaining these original proceedings to review the record upon the appointment of a guardianship that a decision favorable to the applicant might render unnecessary a long and expensive trial of the proceedings for restoration to capacity and render unnecessary our own decision in the two original proceedings then pending. It was upon this basis that the order to show cause was issued. It now appears that a favorable judgment in this matter will not at all relieve Mrs. Grinbaum of the necessity of proceedings for restoration to capacity because of the fact that her incapacity is established by the German decree. We are called upon in this matter to exercise our discretion in three different particulars: First, in the question of whether or not the proceedings will be entertained at all in the court of last resort without requiring the parties to first present the matter to the superior court; second, we are called upon to determine whether or not in this proceeding we will exercise our discretion by annulling the order of the trial court appointing the Mercantile Trust Company as guardian in the event that we conclude that the trial court had no jurisdiction to make the appointment; third, we are called upon to determine whether or not for the purpose of prosecuting these proceedings we will appoint and continue in power the guardian *ad litem.*

In view of the fact that we have already expended the time and labor involved in a consideration of this matter, both by briefs and argument, it may be that if there is no consideration involved other than the inconvenience resulting to the pressing business of this court by taking up such proceedings in the first instance, that we might waive that question and proceed to judgment. Second: With reference

to the discretion as to the issuance of the writ of review upon the application of Mrs. Grinbaum, it might be that if we were fully satisfied that she was capable of conducting her own affairs and was only deprived of that authority because of a decree entered without jurisdiction and without notice to her, we might be justified in entertaining jurisdiction on the theories advanced in the main opinion. But as to the exercise of our discretion and power in appointing and continuing in power the guardian *ad litem* for the purpose of attacking this order declaring Mrs. Grinbaum incompetent and appointing a guardian to take possession of her property, it is clear to my mind that under the circumstances disclosed by the record this ought not to be done.

I will state my reasons briefly for the conclusion. It appears that the Mercantile Trust Company was appointed guardian at a time when Mrs. Grinbaum was insane and under guardianship and for that reason, and that the guardianship in Germany was continued after a full inquiry into her mental capacity. It further appears that the guardianship proceedings here were instituted at the request of the friends and relatives of Mrs. Grinbaum and in all probability with the knowledge and upon the request of the German guardian. This German guardian and the guardian subsequently appointed in Switzerland not only had knowledge of the fact that the Mercantile Trust Company was acting as guardian for Mrs. Grinbaum, but they applied to the guardian for money for the maintenance of the ward, and during almost the entire period of guardianship were in receipt of regular remittances from the Mercantile Trust Company to pay the expenses of caring for Mrs. Grinbaum. It further appears that the Swiss guardian was appointed at the instance of the Mercantile Trust Company and eventually surrendered the custody of the ward to an agent acting jointly for the Mercantile Trust Company, the guardian of her estate in California, and the guardian of the person appointed by the California court. It thus appears that the only persons capable of acting for and on behalf of Mrs. Grinbaum had full knowledge of and fully acquiesced in the appointment of the Mercantile Trust Company as guardian. It is no doubt true that Mrs. Grinbaum would not be bound by the extraterritorial acts of her German and Swiss guardian, and that so far as the conduct of the guardian of her

person appointed in California is concerned, that appointment is also under attack. This contention, however, does not dispose of the question involved, namely, as to whether or not we should appoint a guardian *ad litem* to directly interfere with that which has been acquiesced in by her general guardian, inasmuch as it is necessarily conceded that Mrs. Grinbaum is incapable of acting for herself because of the legal adjudication of incompetency which is still in full force and effect. It seems to me that if the proceedings for the appointment of her guardian here are to be attacked in *certiorari* proceedings, that attack should be made by a general guardian properly appointed who would have the right in the event of a successful termination of the proceedings to immediately take over the estate now in the custody of the Mercantile Trust Company. The difficulty I see in the matter is that the guardian *ad litem* is acting under the authority of the appointment by this court and solely upon that authority. It is true that the appointment is predicated upon the petition of the ward herself and of her relatives in this jurisdiction, but inasmuch as her own consent is clouded by the incompetency resulting from the German decree, it seems to me that we ought not to proceed further in the matter. There are other considerations leading to the same conclusion and bearing upon our general discretionary powers. It clearly appears that at the time of the appointment of the Mercantile Trust Company Mrs. Grinbaum was in fact insane and that she continued to be so for many years thereafter. It further appears that her insanity is of such a type that actual notice to her of the pendency of the proceeding for the appointment of a guardian in California would have had no effect whatever upon her. That is to say, she was incapable mentally of receiving notice, and whatever form the notice may have taken her mentality was so clouded that she would not have understood or appreciated the nature or effect of the notice.

It is clear, then, that if the almost universal form of notice given by the probate court under the statutes of this state, namely, a notice posted for ten days in three public places in the county, had been given, that such notice would have been utterly unavailing to actually bring home to the insane person, then in Germany, knowledge of the proposed proceeding in California. It is true that of necessity we

indulge in the conclusive presumption that notices of that type do in fact notify nonresidents of the pendency of proceedings affecting their rights in California. Assuming, as the majority opinion holds, that in default of such notice the proceedings are utterly void, I do not think that we should indulge in the legal fiction that only by such notice or a similar notice could the ward be subject to the jurisdiction of the court when the result of our action will be to declare that the acts of the guardian for more than ten years had been without legal authority. The Mercantile Trust Company in their answer to these proceedings allege that the transactions of the estate have involved the transfer of nearly $2,000,000 worth of property, and that during its administration the estate has increased from a value of $800,000 to nearly $2,000,000. We are asked to declare these proceedings all void at the instance, not of the ward, but of a guardian *ad litem* appointed by ourselves. I think this ought not to be done.

It is true that in considering this matter we must recognize that Mrs. Grinbaum, being under a formal adjudication of incapacity, could not herself take any action which would be binding upon her. Nevertheless, it is true that during all this period she has been supported by moneys provided by the Mercantile Trust Company from the funds belonging to her in their hands. If she is not estopped by her conduct in thus acquiescing in the appointment of the Mercantile Trust Company as guardian, it is only because of her adjudicated incapacity, and it seems to me that we ought not to appoint another guardian *ad litem* to attack this guardian and thus have at the instance of the guardian *ad litem* a declaration that an order to which she and her general guardian have consented, as far as they were capable of consenting, declared null and void.

It may be said that we have already exercised our discretion by the appointment of the guardian *ad litem*. This is true, but when after a complete hearing of the matter it is manifest that the result of his appointment is merly to give this guardian so appointed by us an opportunity to attack a guardian appointed by the superior court, where such appointment has been acquiesced in not only by the ward herself, but also by duly appointed general guardians of

her person and estate in Germany and Switzerland, I think
we should not continue the guardian *ad litem* in office.

The fact is that we are baffled at every turn in this case
by the fact that Mrs. Grinbaum is under adjudication of
complete and total incapacity to transact business, and that
at the same time she claims to be sane and is prosecuting
a proceeding for restoration to capacity.

It has been held by the supreme court of the state of Missouri in the case of *Dutcher* v. *Hill,* 29 Mo. 271 [77 Am. Dec.
572], that where an alleged insane person petitions for
restoration to capacity in a guardianship proceeding, he
could not subsequently attack the validity of those proceedings upon the ground that he had had no notice of the
original appointment of the guardian and that he was
thereby estopped from pursuing property which had been
sold by the general guardian so appointed in the hands
of an innocent purchaser from the guardian. Under the
principles established by this Missouri case, Mrs. Grinbaum,
after having applied for an order restoring her to capacity,
cannot now be heard to claim that the guardian was not
originally appointed upon proper notice. But here we again
encounter the baffling difficulty that while Mrs. Grinbaum
in her own proper person could apply for restoration to
capacity in the probate court in California and after such
restoration might be bound by the original order appointing
a guardian, she was in this case under the additional disability of the German and Swiss decrees of incompetency,
and it is doubtful if her application for restoration to capacity in the California court would have any effect as a
waiver or estoppel because of her disability under the German and Swiss decrees. It seems to me that an order vacating the appointment of the Mercantile Trust Company before the appointment of a guardian entitled to receive the
property of the ward and without any adjudication as to her
restoration to capacity would result in confusion and delay.
And confusion and delay in an estate involving $2,000,000
means great expense. The guardian *ad litem* in this matter,
it should also be stated, adheres consistently to his contention that the real purpose of these proceedings is to obviate
the delay and difficulty incident to a trial of the proceedings
for restoration to capacity, and when we have determined
that such proceedings in some form or other are essential,

it is clear that we ought not to proceed further in the matter.

In my judgment we should discharge the guardian *ad litem* and dismiss the proceedings without prejudice to any further actions that may be undertaken by the parties interested.

Rehearing denied.

All the Justices concurred.