Thacher, J.
I am in favor of sustaining the appeal and going into the inquiry prayed for by the appellant. From the nature of the case it seems to me that he is entitled to prosecute in the manner he has. It would have been useless for him to give bonds. The effect of the appointment of guardians was to take away from the appellant the capacity of acting, civiliter; and his bond would have been void. All his property is in the hands of the guardians, and therefore his bond could be of no use.
* Sewall, J.
As at present advised, I am for sus taining the appeal, (notwithstanding no bonds have beer, given,) and going into the inquiry. The appointment of the guardians being for a temporary purpose, has, perhaps, if the allegations of the appellant be true, become void of course. But it may be of service to set it aside in form, to prevent disputes, in future, as to the restoration of the appellant to his capacity of acting and contracting ror himself.
*407 Sedgwick, J.
There seems to be two questions; First, whether the appellant is a proper person to bring forward a suit to repeal the letters of guardianship; and, Secondly, whether bonds ought not to have been given.
As to the first, I am of opinion that he is competent. The law contemplates that there may be a time when a person, in the situation of the appellant, may be restored to his property ; that is, when he is restored to his reason. I do not think he is to be left to friends. Their ignorance of the fact, carelessness, or inattention, ought not to leave him in bondage forever. The statute, a law made for the most humane purposes, could not intend it. As to the second question. The appellant has been adjudged of such mental debility as to be incapable of contracting and taking care of himself, and he has had guardians, for that reason, appointed. That decree is now in force, and he is the ward of these guardians. How, then, has he the capacity of making these bonds, without which, it is said, his wardship shall be perpetual, however perfectly his mind may have become restored ? But how are such bonds necessary ? They are to satisfy the costs to which the appellees will be entitled in consequence of the final rejection of his petition by a decision against him. Now, the letters of guardianship will either be repealed, and in that case the appellees entitled to no costs, and the bond, of * course, wholly unnecessary ; or the guar- [ * 547 j dianship will be confirmed by the dismissal of the petition, and that because the appellant is proved to be non compos mentis; and in such circumstances his contracts in general, and, of course, such bond would be void. To this it maybe added that the whole estate of the appellant is in the hands of the appellees, and they will, if their guardianship continue, be able to pay themselves. For these considerations I am of opinion this is not a case within the statute. It is really a very strange objection to be made by the appellees. They, while the decree of the judge of probate remains in force, have the sole power of contracting in the behalf of the appellant, yet refuse to answer to his petition until he has given a bond. What is this but saying, that however the appellant may be relieved of that most calamitous visitation of Providence for which he was put under guardianship, yet that the guardianship shall be perpetual? In the other view the objection is absurd, as it calls upon a man to make a solemn contract by deed, while those who demand it declare him wholly incapable, from mental debility, of making any contract. The Court therefore will go into the inquiry.
From the testimony of the witnesses, who were called to testify in the case, it appeared perfectly clear that the appellant was in the *408 full possession of his reason, and, considering his age, uncommonly capable of taking care of himself and his property.
Wilde and Crosby for the appellant.
Parker and P. Mellen for the appellees.
The Court (Sedgwick, Sewall, and Thacher, justices) were clearly and unanimously of opinion that the decree of the judge of probate must be reversed. And by,
Sedgwick, J.
I believe the difficulty in this case has arisen from confounding two distinct and independent provisions of the act of March 10, 1784, (stat. 1783, c. 38.) empowering judges [ * 548 ] of probate to appoint * guardians; that of the 3d sect. authorizing the appointment of guardians to idiots, non compos and lunatic persons ; and that of the 8th sect, which regards the idle and dissolute. By the latter sect., judges of probate are authorized, upon complaint and due notice thereof, to appoint tiardians to “ any person who, by excessive drinking, gaming, idleness, or debauchery of any kind, shall, so spend, waste, or lessen his or her estate, as thereby to expose himself, or herself, or his or her family, or any of them, to want or suffering circumstances, or shall, ,by thus spending, wasting, or lessening his or her estate,” expose he town to a charge for maintenance. From the evidence produced on the part of the appellees, there is at least some reason to believe that the appellant might have been brought within this sect, of the act, if the proceedings had been upon it; but all this is out of the question ; the appellant has not been charged with drinking, gaming, idleness or debauchery of any kind. He had no notice to attend before the judge, as must have been the case if the prosecution had been on this sect, of the act. We must therefore lay aside all evidence which might have been applied in such a case, and attend to the record before us, and the evidence which has been given as to the reason and capacity of the appellant. From this evidence it is clearly, and beyond all doubt, established, that the appellant has the capacity of taking care of himself and his property, The decree of the judge of probate must therefore be reversed.
Decree reversed, and the letters of guardianship revoked