EDWIN S. HOVEY *versus* EBENEZER HARMON.

Whatever disability was imposed upon a person, by the appointment under the statute of 1821, by the Judge of Probate, of a guardian over him, as a person *non compos mentis,* without a previous formal decree as to his mental condition, was removed by the subsequent discharge, by the Judge of Probate, of such guardian upon his own petition, and without notice.

*It seems,* that, under the statute of 1821, there must be a formal decree, by the Judge of Probate, that a person is *non compos mentis,* before a valid appointment of a guardian over him, as such, could be made.

ON REPORT.

WRIT OF ENTRY to recover certain real estate in Portland. Writ dated July 24, 1858. Plea "*nul disseizin,*" with a "brief statement" denying plaintiff's title and right of possession, and claiming that the title and right of possession were at the commencement of the suit in tenant's wife, with whom and by whose assent he occupied them.

It was admitted that, prior to July 11, 1835, Stephen Neal owned the demanded premises; that he died, December 28, 1836, intestate, leaving one child, Lydia S. Dennett; that said Lydia, prior to 1831, was married to Oliver Dennett, whose wife she continued to be till December 18, 1851, when said Dennett died.

The demandant read in evidence a deed from said Lydia S. Dennett to himself, dated July 15, 1858, covering the demanded premises.

The tenant then read in evidence a deed covering the same premises, from the said Stephen Neal to Samuel E. Crocker, dated July 27, 1835.

The demandant then read in evidence attested copies of the records of the Probate Court for the county of Cumberland, showing the appointment of a guardian for said Stephen Neal, on the third Tuesday of April, 1834, as "a person *non compos mentis,* and incapable of taking care of himself," the contents of which are sufficiently stated in the opinion.

The tenant offered in evidence attested copies of the petition of said guardian to be discharged from his trust, and the proceedings of the Probate Court thereon, on the first Tuesday of September, 1834. The contents of these papers are stated in the opinion.

The tenant also offered to prove, by competent evidence, that, at the time the deed from Neal to Crocker was executed, Neal was of sound mind, and fully capable of selling and conveying his property.

The testimony thus offered was excluded by the presiding Judge.

Thereupon, the case was withdrawn from the jury, and reported to the full Court, for the settlement of the questions of law arising in the case, and affecting the rights of the parties.

*Albert Merrill*, for plaintiff, submitted an elaborate argument in support of the following propositions : —

*First.* The original decree of *guardianship* was conclusive evidence, against all the world, of said Neal's incompetency to contract or convey his property, while said decree remained neither reversed, revoked nor annulled, by the same or some other competent tribunal.

*Second.* Said decree was not reversed, revoked or annulled, by said proceeding of the Probate Court, on the first Tuesday in September, 1834, on the petition of said guardian, nor was said Neal in any manner relieved by it from the legal disability to contract and convey his property imposed by said original decree.

This decree does not state, *in terms*, that the original decree was reversed, revoked or annulled, or that "the guardianship was discharged"; but only "*that said Neal Dow be dismissed and removed from his said office and trust of guardian of the said Stephen Neal.*"

Although the mere dismissal of the guardian, as stated in this decree, would not relieve the ward of the legal disability of the original decree of *guardianship*, or have any

effect to restore his competency to contract or convey, yet, even as such dismissal, we maintain that it was entirely void, both as to said ward and the presumptive heiress, and his and her privies in estate.

*Rand* and *Deane*, for the defendant.

The opinion of the Court was drawn up by

APPLETON, J.—In England, the Court of Chancery has the control of the person and property of lunatics. The king, as a branch of his prerogative, is entitled to their custody, and the chancellor, in respect to them, acts under a special and separate commission from the crown, authorizing him to take care of their property for their benefit. Upon application made by the relatives of the supposed lunatic, or by those interested in the estate, and upon proofs furnished *ex parte*, he issues a commission of lunacy to certain persons by him appointed, whose duty it is to inquire concerning and make return to him of the mental condition of the individual in question. The issuing a commission is a matter of discretion, regulated solely for the benefit of the lunatic, with reference to the care of his person and property. It does not issue as of course on probable proof of the fact of lunacy. *Ex parte, Tomlinson,* 1 Ves. & Bea., 57. The alleged lunatic, except in cases of confirmed and dangerous madness, is entitled to reasonable notice of the time and place of executing the commission, and a reasonable time to produce his witnesses before the jury. *In the matter of Russell,* 1 Barb. Ch. Rep., 39. He may, if he chooses, but with the chancellor's permission, traverse the inquisition, and he is examined in court to ascertain if such be his wish. Though the jury may find a party of sound mind, yet if the Court are of opinion that they erred in their finding, it may, in the exercise of a sound discretion, direct the issuing of a new commission of lunacy, and, in one instance, no less than three were issued before there was a finding of *non compos mentis.* *In the matter of Lasher,* 2 Barb. Ch. R., 97.

There may be a partial or a total recovery. If partial, the chancellor suspends in part the proceedings against the lunatic, thus removing, to a limited extent, the disability under which he labors. *In the matter of Burr*, 2 Barb. Ch. R., 280.

If the recovery is entire, a petition is presented for a *supersedeas*, signed by the former lunatic, and a hearing is had before the chancellor, upon proofs by affidavit and the personal examination of the party. Sometimes, however, the examination is by some one acting under the authority of the Court. *In re Dyce Sombre*, 1 Phillips' Ch. Rep., 437. "The care and custody of lunatics being confided to this Court," remarks Chancellor KENT, *in the matter of Wendell*, 1 Johns. Ch., 600, "the whole control of the inquisition, and the manner in which that control shall be exercised, would seem to depend entirely on the discretion of the Court. The lunatic may be brought into Court, and an inquiry had, by inspection, after the inquisition is returned, as in *Heli's* case, (3 Atk., 634,) and, in the case of returning sanity, this is frequently the course, aided by affidavits and the certificates of physicians." As the whole jurisdiction is in the Court, the only object of proof is *ad informandam conscientiam*, and to enable the Court to arrive at correct conclusions as to the facts presented for determination. When the evidence shows the restoration of the lunatic a *supersedeas* issues.

The cause is entitled, in the matter of A B, a lunatic. There are no parties litigant before the Court. The proceedings in chancery, in the matter of lunacy, are not regarded as directed *against* the party. They are for his benefit. *In re The Princess Bariatinski*, 1 Phillips' Ch. R., 377.

The settled and general jurisdiction, existing at common law in the ordinary or ecclesiastical Courts, is, with us, conferred upon the Probate Court, to which is superadded the authority to manage and control the affairs of the idiot and the insane, the drunkard and the spendthrift. It is because, to a very considerable extent, the jurisdiction exercised in

England by Courts of equity, has been conferred upon the Court of Probate, that we have thus adverted to the course of procedure there.

The rights of the parties in this case, however, must mainly depend upon the statutes in force in 1834, when proceedings were had, upon the effect of which we are now called upon to adjudicate.

By the statutes of 1821, c. 51, § 49, the Judge of Probate is authorized to appoint, upon the application of his friends, relatives or creditors, a guardian, "to take care of the person and estate" of one said to be an idiot, lunatic or distracted person.

By § 51, "in case any such idiot, lunatic, or distracted person shall be restored to the use of his reason, the residue and remainder of the estate, real and personal, shall be returned and delivered to him," &c.

By § 55, any Judge of Probate "may dismiss any guardian of a minor, idiot, *non compos*, or lunatic person," * * * "whenever *it shall appear to the said Judge to be necessary or expedient*, and to appoint some other guardian in his place; *provided*, that no such guardian shall be dismissed as aforesaid, before he shall have had notice in writing from said Judge, fourteen days at least before the time of hearing, to appear and show cause why he should not be dismissed." As his own views of necessity or expediency are to control his action, the Judge may remove, with or without appointing a successor, as in his judgment will best promote the interests of the ward. So he may act in the matter upon the petition of those interested, or upon his own knowledge derived from the official conduct of the guardian as disclosed in the records of his Court. ⸱ The subject matter of appointment and removal is submitted to his judgment and discretion. If the lunatic recovers, the Judge should not appoint a guardian; for the lunacy and the protection of the lunatic's estate, which constitute the reasons for, and the justification of his judicial action, will have ceased.

It appears, by the records from the Register's office, that

upon the representation of Samuel F. Hussey, a friend of Stephen Neal, that said Neal was "*non compos* and incapable of taking care of himself," the Judge of Probate directed the Mayor and Aldermen of the city of Portland to make inquisition as to the mental condition of said Neal, which they did, and adjudged him to be *non compos* and incapable of taking care of himself, and made due return of their doings in the premises.

The notice to Stephen Neal, given pursuant to the requirements of § 49, recites the inquisition to have been made by the Selectmen of the town of Portland, when, in fact, no *such* inquisition could have been made as there were no such officers to make it. It makes no allusion to the inquisition made by the Mayor and Aldermen of the city of Portland, upon which the action of the Judge of Probate was based. It nowhere appears that notice was given of the inquisition *as* made and by whom made, unless the person notified was bound to know that the Selectmen of the town of Portland meant the Mayor and Aldermen of the city of Portland.

The notice to Neal was obviously informal, but it is not necessary to discuss its sufficiency. Assuming it sufficient, it is next to consider what was decreed by the Judge consequent upon giving such notice.

The decree, after referring to the representation of Hussey, the inquisition as had, and the notice *as* given, proceeds as follows :—"And it being fully *proved* here in Court that the said Stephen Neal is *non compos mentis* and incapable of taking care of himself, I do therefore DECREE that a guardian be appointed over him, pursuant to law. And I do further decree that Neal Dow, of Portland, in said county, merchant, be appointed guardian of said Stephen Neal, he giving bonds with sufficient sureties, in the sum of ten thousand dollars, and thereupon a letter of guardianship to issue to him in due form of law."

It will be perceived that here is simply the finding of those facts which would render the appointment of guardian

for Stephen Neal proper, and then a decree "that a guardian be appointed over him."

Subsequently, the guardian applied for a discharge from the further performance of the trust he had accepted. In his petition he represents "that within a few months the bodily and mental powers of his ward have very much improved, so that he is believed to be *capable of managing his own affairs and taking care of himself, which he is desirous to do*. His improvement in his health and general condition, is apparent to all his friends, who are not only willing, but desirous that he should be relieved from the legal disability under which he has been placed and *should once more have the absolute control of his personal property*."

The decree of the Judge, after reciting the term of the Court at which it was made, thus proceeds:—"Upon the foregoing petition and representation, *the facts therein stated being fully proved*, I do thereupon decree that said Neal Dow be dismissed and removed from his said office and trust as guardian of the said Stephen Neal.

"Barrett Potter, *Judge*."

To authorize the appointment of a guardian, the Selectmen, by § 49, were to judge the person said to be a lunatic, "*to be incapable of taking care of him or herself*." By that section, nothing else is to be certified to the Judge of Probate. Now the petition of the guardian represents that the bodily and mental powers of his ward have very much improved, so that he is believed "to be capable of managing his own affairs and taking care of himself."

It will be perceived, that the belief is asserted of the existence of facts which negative the material facts found by the Mayor and Aldermen of the city of Portland. They found that Stephen Neal "was incapable of taking care of himself." The belief is asserted that he "is capable of managing his own affairs and taking care of himself." If the belief was well founded, it is not easy to see why Neal should have remained longer under guardianship. Certainly not for his own benefit, for he is capable of "taking care of him-

self," and, therefore, he would not need the aid of another. The decree rests upon the "facts therein (the petition) stated being fully proved," not that the belief of the petitioner was proved, but that the facts believed by him, which induced the action on his part, and which, if existing as believed to exist, would, and did, furnish ample ground for the decree of the Judge of Probate, were proved. It would be absurd to apply the subtleties of special pleading in the construction of the records of the Probate Court. No one who reads can doubt as to the meaning of the petition, nor as to that of the Judge in his decree. Nor is it readily perceived why the Court should strive to misunderstand what is plain to the understanding of every body else.

It has been seen that there was no *decree* that Neal was of unsound mind, but only a decree that a guardian be appointed and his appointment. So there is no decree removing the disability from the lunatic, but there is one removing the guardian. The facts which show the appointment of a guardian necessary, and those which show his dismissal or removal expedient, are respectively found. A guardian has been appointed and removed, and that constitutes the whole of the judicial action of the Probate Court. There could be no decree removing the disability of the ward, because there was none specially imposing it.

It would seem, indeed, according to the opinion of the Supreme Court, in *Kimball* v. *Fiske*, 39 N. H., 110, that there should be a formal decree that the person said to be a lunatic is of unsound mind. "There does not appear," remarks BELL, J., in the case just referred to, "to be any formal record that the plaintiff was a person of unsound mind; and it is contended that, without such a *decree*, there can be no valid appointment of a guardian. And we think that it is clearly so, not only from the nature of the case, but from the terms of the statute." In *Chase* v. *Hathaway*, 14 Mass., 222, PARKER, C. J., in delivering the opinion of the Court, says,—"In the case now before us, it appears that no formal decree was ever passed declaring the appellant *non*

*compos;* or, if passed, that the only evidence of it rests in the recital, which precedes the letter of guardianship. * * This seems to us as irregular as it would be for a common law court to issue execution without any evidence of a judgment, except what might be contained in the execution."

But it is not necessary to determine the sufficiency of the decree. If the law be as is asserted in the cases cited, it would seem that there has been no valid record of the appointment of guardian. If a decree thus formal is not necessary, then the matter stands thus, — a guardian has been appointed and removed, and nothing more. What was done in the Probate Court has been undone, and, so far as relates to the mental capacity of Neal, it is as if nothing had been done. Its loss and its subsequent restoration have both been judicially established. The record shows the latter as much as the former.

It is insisted the proceedings as to the dismissal of the guardian are invalid, because, before his removal from his guardianship, no public notice in relation thereto was given.

By § 55, notice to the guardian is required when the proceedings are or may be adverse. But here the guardian applied for his own dismissal. It would have been idle to have notified him, and there was nobody else to be notified, for the dismissal or removal of a guardian is a matter of discretion on the part of the Judge.

The right of the Judge to remove, after notice, on his own motion or upon petition, includes the right to accept a resignation voluntarily made. Nor, when the guardian is dismissed, whether on his own petition or on that of another, is the Judge of Probate obliged necessarily to appoint a successor. If the reason for the original appointment had ceased, as in case of a recovery, then the necessity of making a new one would cease with it.

The petition for a *supersedeas* is ordinarily signed by the former lunatic. But in *ex parte* M, before the Vice Chancellor, a *supersedeas* issued on the petition of the committee of the lunatic, who stand in a relation to him analogous to that

of guardians under our statutes.    2 Hoff. Chan. Prac., 263.
No reason exists why the guardian may not petition equally
with the committee.

The record here shows that, upon the facts in the petition
of the guardian being fully proved, the Judge of Probate
decreed his dismissal and removal from his office and trust of
guardian.    The proof was such as satisfied him it was
"necessary and expedient" so to do, and that it was neither
necessary nor expedient to appoint a successor.    The stat-
ute does not require notice to be given in the matter.    The
Probate Court had acquired jurisdiction.    The record need
not disclose notice of every step in the course of proceed-
ings, unless such are the requirements of the statute.    It
was determined in *Kimball* v. *Fiske*, 39 N. H., 110, that the
proceedings of Courts of Probate in relation to the appoint-
ment of guardians of insane persons are not void, however
irregular or erroneous, if the Court had jurisdiction of the
subject matter of the proceeding.    The same principle is
equally applicable to the removal of a guardian.

The conclusion is, that Stephen Neal was under no legal
disability arising from the proceedings in the Probate Court,
when the deed under which the tenant derives title was
given.

Nor can this result be a source of regret.    If Neal was,
in fact, insane, the plaintiff's rights will be amply protected
upon proof thereof.    If sane, he has none requiring or
needing protection.            *The case to stand for trial.*

CUTTING, MAY, GOODENOW and DAVIS, JJ., concurred.
TENNEY, C. J., did not sit.