Devin, Guardian, *v.* Scott and Another.

HABITUAL DRUNKARD.—*Legislative Control.*—The act of March 9th, 1867, (Acts 1867, p. 109), "to provide for the care and custody of the person and estate of habitual drunkards," is an enactment within the power of the legislature.

SAME.—*Contracts of Drunkards Under Guardianship.—Injunction.*—An inquisition under said act by which it is found that a person is an habitual drunkard and incapable of managing his estate, or that there is danger of his squandering it, and the appointment of a guardian for him, are conclusive evidence of the incapacity of such person to make a contract while under such guardianship; and the collection of a judgment rendered against a person while under such guardianship, the guardian not being a party thereto and having no knowledge thereof until after its rendition, on a contract made by said person after inquisition found, will be enjoined at the suit of the guardian, when it does not affirmatively appear that the contract was for nesessaries furnished said person, the guardian having failed to make needful provision.

APPEAL from the Gibson Common Pleas.

BUSKIRK, J.—The appellant, as the guardian of James A. Devin, filed a complaint in the court below, againt the appellees, to enjoin them from collecting a judgment rendered by a justice of the peace in favor of Thomas J. Scott, one of the appellees, and against the said James A. Devin. The court granted an injunction, and afterwards, on the motion of the appellees, the injunction was dissolved, to which the appellant excepted; and she now prosecutes this appeal for the sole purpose of obtaining a reversal of the order of the court dissolving the injunction. This is the only question presented by the record for our decision. The complaint alleges, in substance, these facts, namely:

That in a proceeding pending in the Gibson Common Pleas Court, at the August term, 1867, wherein Nancy Devin was plaintiff, and James A. Devin was the defendant, the Court found that said James was an habitual drunkard, and incapable of managing his estate, and that there was danger of his squandering it; that the court appointed the said Nancy Devin the guardian of the person and estate of the said James A. Devin, and that she duly qualified as such

guardian; that the said Thomas J. Scott, on the 30th day of March, 1869, obtained a judgment against the said James A. Devin, before, and in the court of, Andrew J. Wright, a justice of the peace, for the sum of twenty-three dollars and eighty-five cents and costs of suit; that the summons in the said cause had been issued against and served on the said James A. Devin; that the said Nancy Devin as such guardian was not a party to said action, and had no knowledge of it, until long after the rendition of the said judgment; that the contract upon which the said judgment was rendered had been made between the said Thomas J. Scott and the said James A. Devin, after the said James A. Devin had been adjudged an habitual drunkard and incapable of managing his estate and the appointment of a guardian; that an execution had been issued on the said judgment and delivered to the appellee George Reed, as constable, who had by virtue thereof levied on a certain overcoat, being the property of the said James A. Devin, and that the said Reed, as such constable, threatened to sell the said property. The prayer of the complaint was, that the defendants be perpetually restrained and enjoined from the collection of said judgment.

The decision of the question presented will depend upon the interpretation and construction of an act entitled "An act to provide for the care and custody of the person and estate of habitual drunkards" (approved March 9th, 1867). See Acts of 1867, p. 109. The first section of said act confers upon the circuit and common pleas courts the power, when a complaint under oath is filed, alleging that any person is an habitual drunkard, and is the owner of real or personal estate, or both, that he is incapable of taking care of the same, or that there is danger of his squandering it, to hear and determine as to the truth of the matters alleged, after the defendant has received ten days notice of such proceeding. The second section provides that if the court or jury trying the same shall, after the evidence is heard, find that such person is not an habitual drundard, and is capable of managing his estate, and that there is no danger of his squan-

dering it, such person shall be discharged, and the costs of the proceeding shall be taxed against the complaining party; but if the court or jury trying the cause shall find that such person is an habitual drunkard, is incapable of managing his estate, or that there is danger of his squandering the same, the court shall appoint some resident of the county (who shall execute bond to the satisfaction of the court, that he will faithfully perform his trust), who shall act as the guardian of such person and his estate under like restrictions and in the same manner, with the same powers and duties as in the case of guardians for minors, and the costs of such proceedings shall be paid out of such person's estate.

The third section provides that the court may, at any time after one year from making such appointment, upon satisfactory proof that such person has reformed and has voluntarily refrained from the use of intoxicating liquor, for at least one year, discharge the guardian and restore the property to such person.

It is claimed by the appellees that the legislature did not possess the power to enact the above statute, for the reason that it deprives a citizen of the right to enjoy, control, and dispose of his property, and to make contracts. We think there is no doubt as to the power of the legislature to pass such a law, or as to the duty of the courts to enforce it in all proper cases. We presume that no one will call in question the power of the legislature to pass laws depriving idiots, lunatics, and all persons of unsound mind, of the power of controlling and squandering their estates, and appointing guardians of their persons and estates. This is done for the protection of such persons as are incapable of protecting themselves. It surely can make no difference whether the inability has existed from birth, or has been caused by disease or accident, or produced by the excessive use of intoxicating liquors. The true inquiry is, whether a person, from any cause, is incapable of making contracts and managing his property. When this fact is found by a competent court, it is the duty of such court to place such person under guar-

dianship; and when such person is restored to reason and is capable of managing his property and making contracts, then the disability should be removed, and the party restored to all his rights. In England, the court of chancery has the control of the persons and estates of idiots, lunatics, and persons of unsound mind. In this country it is regulated by the statutes of the several states. See 1 Par. Con. 386; 2 Kent Com. 450; *In Re Wendell*, 1 Johns. Ch. 600; *Hovey* v. *Harmon*, 49 Me. 269.

The next question presented is as to the effect of an inquisition found that a person is an habitual drunkard and incapable of managing his property. It is insisted, in this case, that it does not deprive a person who is placed under guardianship, of the power of making contracts, for the reason that the statute does not, in express terms, declare such contracts void. It is not necessary that the statute should declare contracts made by a person of unsound mind void. The judicial finding that the person was of unsound mind, and incapable of making contracts, and the appointment of a guardian, are conclusive evidence that all subsequent contracts are void, and *prima facie* evidence that prior contracts were void. The Supreme Court of New York, in the case of *Fitzhugh* v. *Wilcox*, 12 Barb. 235, say: "Indeed, it seems to me perfectly clear that the judgment of the law which pronounces the party a lunatic, and gives over his person and estate to the custody of another, takes away from him, absolutely, all competency to contract, until his rights are restored."

In the same opinion the court say, "The inquisition found and the decree thereon are notice to all the world, and operate as a judicial sentence upon the question."

The same court, in the case of *Wadsworth* v. *Sherman*, 14 Barb. 169, say, "An inquisition by which a person is found to be of unsound mind and incapable of conducting his own affairs, in consequence of habitual drunkenness, is conclusive evidence of the incapacity of such person." See *M'Donald* v. *Morton*, 1 Mass. 543; *White* v. *Palmer*, 4 Mass. 147; *Leonard* v. *Leonard*, 14 Pick. 280; *Breed* v. *Pratt*, 18 Pick.

Devin, Guardian v. Scott and Another.

115; 2 Kent Com. 235, 236; and *In Re Gangwere's Estate*, 14 Penn. St. 417. Some of the authorities above quoted hold that an inquisition is not conclusive evidence, but is *prima facie* evidence, and that it is competent to allege and prove that when the contract was made the party had a lucid interval, but the very decided weight of adjudicated cases is in favor of the conclusiveness of the inquisition.

But it is urged, that the debt upon which the judgment sought to be enjoined was rendered may have been created for necessaries. This may be true, and yet it may be that it was for intoxicating liquors. We are not informed by the record what the consideration was. But whose fault is it, that we are not informed? The general rule is, that contracts made by a person who has been found incapable of conducting his affairs and placed under guardianship are void. If this case comes within any of the exceptions to this rule, it was the duty of the party relying upon that fact to allege and prove that it came within the exception. The guardian appointed under the act of 1867 is required to "act as the guardian of such person and his estate, under like restriction, and in the same manner, with the same powers and duties, as in the case of guardians for minors."

We have seen that the inquisition and appointment of a guardian are notice to all the world, and it results that persons dealing with the ward or guardian must take notice of the rights of the ward and the powers and duties of the guardian. A minor may make a valid contract for necessaries, if the father or guardian has failed or refused to furnish them. Two things have to concur to render such a contract valid; first, that the father or guardian had failed to make needful provision for the minor, and secondly, that the articles sold were "necessaries," within the well-understood meaning of that word. 1 Par. Con. 298; *Gwaltney* v. *Cannon*, 31 Ind. 227; *McCrillis* v. *Bartlett*, 8 N. H. 569. We think, upon the facts stated in the complaint, that the court should have decreed a perpetual injunction, and that it erred in dissolving the injunction granted.

The judgment is reversed, with costs, and the cause re-manded, with directions to the court below to render a decree perpetually enjoining the collection of said judgment.

*D. F. Embree,* for appellant.

*A. C. Donald,* for appellee.