Note.—See under (1) Workmen's Compensation Acts-C. J. p. 97, §93; anno. L. R. A. 1916A, 258; 18 A. L. R. 1358; 28 R C. L. p. 819; 4 R. C. L. Supp. p. 1866; 5 R. C. L. Supp. p. 1577. (2) Workmen's Compensation Acts-C. J.pp. 97, 98, §93; p. 122, §127; anno. L. R. A. 1917D. 188; 28 R. C. L. p. 828: 4 R. C. L. Supp. p. 1872; 5 R. C. L. Supp. p. 1581.

---

## In re APPEAL OF JACKSON BARNETT.

No. 17061—Opinion Filed Nov. 30, 1926.

Rehearing Denied Jan. 25, 1927.

(Syllabus.)

1. **Insane Persons—Parties—Adjudged Incompetent May Prosecute Action to Determine Legality of Judgment of Incompetency.**

Although one who has been adjudged incompetent of managing his own affairs can ordinarily act through his guardian only, yet, where the very object of an action is to determine the legality of the judgment adjudging him an incompetent, the same may be prosecuted by him in his own proper person.

2. **Appeal and Error—Appeal to District Court in Probate Matters—Effect of Reversal and Spreading Mandate.**

Under section 16 of article 7, Constitution

f Oklahoma, appeals from the county court n probate matters are to the district court. When such an appeal is sustained and the udgment of the county court is reversed and he judgment or mandate of the district court s spread of record in the journal of the ounty court, kept as required by law, the ame operates to vacate the judgment of the ounty court appealed from without any affirmative action on the part of the county ourt.

**3. Judgment—Invalidity of Order Setting Aside in Vacation.**

A judgment of the district court cannot e vacated and set aside by order of the udge "in vacation."

**. Same—Orders "In Vacation"—Records of Court.**

Where the district court convenes in regular session, as shown by its journal, and so ontinues from day to day until by the ournal it is shown that the court adjourned vithout fixing any day in the term to econvene, and thereafter the journal record equired to be kept by section 867, C. O. S. 921, shows orders "in vacation," and there ppears nothing in such orders to show that he court had been reconvened, or that same ere made while the court was in session, he presumption that might otherwise obtain hat the court continued in session, is overome. And when the judge signs such journal, at the subsequent term, as required by the atute, the statute makes the journal so gned a verity, and the orders so shown erein to have been entered "in vacation" nnot be considered as the orders or judgents of the court, or be made effective as ch.

**Appeal and Error—Finality of Mandate of District Court Reversing County Court —Recall of Mandate Necessary for District Court to Vacate its Judgment.**

A judgment or mandate of the district urt reversing the county court, which has en spread of record in the county court, comes the judgment of the county court d cannot be vacated by the district court thout recalling such judgment or mandate.

Error from District Court, Okmulgee unty; James Hepburn, Judge.

The County Court of Okmulgee County ded a motion filed therein by Jackson Bartt to vacate an order adjudging him an ompetent and appointing a guardian for person and estate. He perfected his apl to the district court, which also ded said motion and dismissed his appeal, m which judgment he here appeals. Resed and remanded, with directions.

. B. Rogers, Lytle & Field, and Lydick & Pherren, for plaintiff in error.

Stuart, Sharp & Cruce, Hummer & Foster, Cochran & Ellison, and McCrory & Monk, for defendant in error.

MASON, J. This proceeding was instituted in the county court of Okmulgee county by the filing of a motion, in the name of Jackson Barnett, by his next friend, R. B. Drake, Chief United States Probate Attorney, to set aside and vacate purported guardianship proceedings of said Jackson Barnett, an incompetent, which were pending in said court. To this motion, E. S. Bailey, the acting guardian of Jackson Barnett, filed a pleading in which he demurred to the motion of Drake, in so far as he purported to act in his official capacity, and sought to remove him in so far as he purported to act as next friend of Jackson Barnett. This motion and demurrer of Bailey was sustained by the court, and W. C. Alley was appointed guardian ad litem for Barnett.

Thereafter, another motion in the name of Jackson Barnett, in his own proper person, was filed by L. O. Lytle, acting as his attorney, wherein he sought to vacate said guardianship proceedings. Said motion was substantially the same as that filed by R. B. Drake. The county court, at Bailey's request, dismissed this motion. and an appeal was taken to the district court. which sustained Bailey's motion to dismiss said appeal from the county court, and Jackson Barnett has perfected his appeal to this court. R. B. Drake has also perfected his appeal to this court, the same being cause No. 17062. In re Appeal of Jackson Barnett and R. B. Drake, Chief United State Probate Attorney. 122 Okla. 169, 252 Pac. 418.

The defendant in error contends that the appeal of Jackson Barnett from the county court to the district court was properly dismissed for the reason that Barnett was without capacity to institute said proceedings in his own name, and was without capacity to authorize an attorney to institute same or to take an appeal to the district court from the order of the county court dismissing the same, by reason of the fact that on April 29, 1912, the county court of Okmulgee county, Okla., and on the 29th day of July, 1924, the superior court of Los Angeles county, Cal., had each adjudged him to be incompetent, and each had appointed a guardian for him. Defendants in error, in the district court, pleaded and proved section 40, Civil Code of California, which provides:

"Powers of Persons Whose Incapacity Has Been Adjudged. After his incapacity has been judicially determined, a person of insane mind can make no conveyance or other

contract, nor delegate any power or waive any right, until his restoration to capacity. * * *"

Said section in the California Code is in substance identical with section 4983, C. O. S. 1921. Neither section has any relation to the right of one adjudged an incompetent to institute and prosecute, either in his own name or otherwise, proceedings to set aside such adjudication. Said statutes only relate, as the language clearly shows, **to the capacity of a person whose incompetency has been judicially determined to make a contract or conveyance or delegate any power or waive any right.** There may be some question as to the validity of any contract of employment made between Jackson Barnett and his attorneys, since Barnett was adjudged an incompetent, but we are not concerned with that in this proceeding, but only with the right of his attorneys to institute and prosecute this action in the name of Barnett. Inasmuch as the question here is the right of Jackson Barnett to attack the guardianship proceedings wherein he was held to be an incompetent, and not his right to execute a contract binding upon his estate, the cases cited by defendant in error are not in point.

We have no statute in this state which requires insane or incompetent persons to institute suit by guardian or next friend.

Section 209, C. O. S. 1921, provides:

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in this article."

Section 513, C. O. S. 1921, provides that incompetent persons who have entered into the marriage relation may bring an action to annul the same.

Section 1452, C. O. S. 1921, provides, in substance, that a person who has been declared insane may file his proceeding in the county court to have the fact of his restoration to capacity judicially determined.

It seems, therefore, in the absence of statutory inhibition, that the alleged incompetent should be permitted to maintain, in his own name, an action for the purpose of testing the validity of the decree which purports to have adjudged him incompetent.

In Hiett v. Nebergall, 45 Ohio St. 702, 17 N. E. 558, an imbecile ward filed a motion in the probate court in his own name asking for a termination of the guardianship. The court held that an appeal would lie from an order overruling the motion of the ward to terminate the guardianship upon the grounds that the letters of the guardianship were in the first instance improperly issued. See also, Robinson v. Waggoner (Ohio) 116 N. E. 514.

In 32 Corpus Juris, 762, the general rule is announced as follows:

"It is the policy of both the legislature and the courts to confer ample protection to the rights and interests of insane litigants The courts ordinarily have inherent power and are in duty bound to do so, although no committee or guardian has been appointed and if appointed, whether the committee or guardian has proceeded wisely or not. In the absence of a statute regulating the exercise of the power, it becomes the duty of the court to determine the mode or manner in which the power can best be exercised to effect the end desired. It has been held that the discretion in this regard is to be directed rather to the situation developed by the proceeding itself after the court has taken cognizance of the merits than to a determination in limine of the rights involved and without knowledge of the merits. Where the statute provides the manner in which such rights shall be protected, it must be complied with and followed."

In Shapter v. Pillar (Colo.) 63 Pac. 302 the court said:

"Ordinarily it is true that one adjudged non compos mentis can only act through a recognized representative; but this is not the case where the very object of the action is to determine the legality of the judgment adjudging him incapable of managing his own affairs."

See, also, In re Moss (Cal.) 53 Pac. 357 Harmon v. Harmon (Tenn.) 206 S. W. 333 McDonald v. Morton, 1 Mass. 543.

The defendant in error also contends that even though one adjudged incompetent may attack, in his own name, the proceedings so adjudging him an incompetent, the instant case is not governed by such rule by reason of the fact that in a subsequent proceeding in California, Jackson Barnett was again adjudged incompetent and a guardian there appointed. It is their contention that the guardian appointed in California should prosecute the action to vacate the adjudication in Oklahoma. In reply to this contention, it is necessary, in our opinion, to refer only to the case of Grinbaum v. Superior Court et al., 221 Pac. 635, decided by the Supreme Court of California December 11, 1923. In that case, it appears that Mrs. Julia Grinbaum, an aged woman, while traveling in Germany with her husband, became mentally incompetent by reason of the sudden death of her husband, and she was adjudged an incompetent and a guardian was appointed by the German courts. Sub-

quently, she was again adjudged an incompetent and a guardian appointed by the superior court of San Francisco. Cal. It seems that repeated efforts to seize and control her estate, through said methods of adjudication of incompetency, were made, and that she made original application to the Supreme Court of California, acting on her own behalf and in her own name, wherein she sought a writ of certiorari or prohibition against said superior court proceeding further with said guardianship matter. The Supreme Court of California upheld her right to prosecute such proceeding in her own name.

On examination of the entire record in the instant case, we must conclude that the circumstances surrounding the alleged appointment of a guardian for the plaintiff in error in the county court of Okmulgee county justify him in testing the legality of such proceedings in his own name.

Before discussing appellant's assignments of error, we deem it proper to make a brief statement of the facts in the entire proceedings as disclosed by the record herein.

Jackson Barnett is a full-blood citizen of the Creek Tribe of Indians; he is about 65 years of age.

Under the provisions of the Supplemental Creek Treaty of 1902 (32 Stat. L. 500), he was allotted certain lands in the Creek Nation; same were and are restricted against alienation. Act of April 26, 1906 (34 Stat. at p. 137); Act of May 27, 1908 (35 Stat. at p. 312).

On the 5th of March, 1912, he executed lease for oil and gas mining purposes, which was subsequently approved by the Secretary of the Interior, under said acts of Congress.

Under said lease, the property was developed and proved very productive of oil and gas. He received one-eighth thereof as royalty, which was paid to the federal authorities, as restricted funds under the said acts of Congress. The said lease provided that it should be subject to the regulations of the Secretary of the Interior in force at that time or that might thereafter be placed in force. There had accumulated, up to 1922, in the hands of the federal authorities, approximately one and one-half million dollars; the Secretary of the Interior from time to time changed his rules and regulations governing the control of such restricted lands and the restricted funds arising therefrom. In 1922, the regulations of the Secretary of the Interior of March 1921, governing such funds, were amended so as to provide that the moneys held by the Superintendent of the Five Civilized Tribes (who was under the Secretary) for the benefit of persons alleged to be incompetent, might be paid directly to the alleged incompetent or on his orders, as the Secretary might authorize.

On December 15, 1922, the said Jackson Barnett was before the Interior Department in Washington, D. C., and made a written request to dispose of or place in trust certain portions of his money, which request was approved by the Secretary of the Interior. Under such authorization, Liberty Bonds in the sum of $550,000 were delivered to the American Baptist Home Mission Society, and by it in turn delivered to the Equitable Trust Company to be held in trust as long as the said Jackson Barnett lived, $20,000 of the income therefrom to be paid annually for his benefit; $550,000 of Liberty Bonds were delivered to the wife of the said Jackson Barnett; $200,000 of which was placed with the Riggs National Bank of Washington, D. C., $7,500 from the income to be paid to the benefit of Jackson Barnett during his lifetime. The said amount so given the Baptist Home Mission Society was, at the death of said Jackson Barnett, to be used for the benefit of Bacone Indian School, located at Bacone, Creek Nation, Okla. The $200,000 held by the Riggs National Bank to be delivered, on his death, to the said wife of Jackson Barnett. Trust agreements so providing were executed.

The contention is made by counsel for plaintiff that, although Jackson Barnett had no close or immediate relatives, certain persons who were preparing to interest themselves in his estate after his death, were instrumental in securing an order of the county court of Okmulgee county directing said E. S. Bailey, as guardian of Jackson Barnett, to bring suits, for the recovery of all said bonds, against the parties receiving the same, in trust. Suits were accordingly brought in the proper jurisdiction for that purpose.

It was then that the proceedings appealed from herein were commenced by R. B. Drake filing his motion attacking said guardianship proceedings wherein Carl J. O'Hornett was appointed guardian and the said E. S. Bailey was subsequently appointed.

Said guardianship proceedings were originally commenced on April 22, 1912, when a petition was filed in the county court of Okmulgee county praying the appointment of a guardian for Jackson Barnett. An order was entered on April 29, 1912, appointing the

said Carl J. O'Hornett as guardian. Within five days after said hearing and purported appointment, Jackson Barnett, in person, and by his next friend, Timmie Randall, filed in said court their petitions to set aside said orer purporting to appoint the said Carl J. O'Hornett guardian for the said Jackson Barnett. The county court heard said petitions and denied the same. and Jackson Barnett and Timmie Randall, as next friend, duiy appealed from said judgments of the county court to the district court of Okmulgee county. On the 24th of June, 1912, the district court consolidated and heard the two said appeals and decreed that the county court of Okmulgee county was without jurisdiction to appoint a guardian for Jackson Barnett, and vacated and set aside said order and judgment purporting to appoint Carl J. O'Hornett as guardian, and directed that a certified copy of its judgment be spread upon the journal of the county court. The material language of said judgment of the district court, and from which no appeal was ever perfected, is as follows:

"And having inspected the records of both said appeals and upon motion of appellant, finds, orders and adjudges that the county court in and for Okmulgee county, Okla., had no jurisdiction of the parties or the subject-matter hereof; that the order of said court entered on April 29, 1912, whereby the said county court did purport to appoint Carl J. O'Hornett as the legal guardian of the person and estate of Jackson Barnett, an alleged incompetent, is null and void, and the same is hereby vacated and set aside.

"It is hereby further ordered that the clerk of this court transmit to the county court in and for Okmulgee county, Okla.. a certified copy of this judgment, and order, and that the said county court in pursuance of the judgment herein, vacate and set aside its order heretofore made, attempting to appoint Carl J. O'Hornett as guardian of Jackson Barnett, an alleged incompetent."

The court clerk on July 1, 1912, comp ied with the judgment of the district court and filed in said county court a copy of the said judgment. Some contention was made that the county judge should enter certain orders after the filing in the county court of the judgment of the district court. The county judge refused to do so, and, on July 8, 1912, he was required to do so by a peremptory writ of mandamus. In said proceeding the county judge responded, among other things, as follows:

"The order prayed for (that is, the mandamus) is in an action which was appealed to the honorable district court of Okmulgee county, where the trial of said cause upon questions both of law and fact is de novo, and it is and was the duty of said court to make any and all final orders in said cause and the judgment of said court is and was conclusive of the law and fact in said cause, and becomes a substitute for the judgment of the county court, and operates of its own force and effect to vacate the judgment of the court below, which has no duty to perform in further vacating said judgment." Signed, George A. Johns, County Judge, and sworn to by him.

This order of the district court, which, in effect, was a mandate from the district court to the county court, was not and never has been recalled. Thereafter, on September 5, 1912, the judge of the district court of Okmulgee county attempted to make an order setting aside its said judgment of June 24, 1912, wherein it vacated the judgment of the county court appointing said guardian. The journal of the district court, however, shows that on August 7 1912. said court adjourned without fixing any day or date when the court would reconvene. From August 7th up to and including the 5th day of September the journal of the district court shows orders entered "in vacation," and on September 5th, the journal, after showing the word "in vacation." shows the order above referred to attempting to vacate its former order After said order of the district court of September 5, 1912, the said Carl J. O'Hornett claimed to be, and acted as, guardian for considerable period of time, after which he filed his resignation as said guardian, which was accepted by the county judge. After said resignation was accepted, and without a petition for the appointment of another guardian and without notice or citation to, actual knowledge of the said Jackson Barnett, and without his consent thereto, or even his presence in court. the county court made an order appointing the said E. S. Bailey guardian of the person and estate of Jackson Barnett, and the said Bailey now assumes to act in said capacity.

This brings us down to the commencement of the proceedings now before us, where the petitions of Jackson Barnett, in his own proper person. and by R. B. Drake. next friend. were filed in the county court and subsequently disposed of in the district court from which Barnett has perfected this appeal.

For reversal. it is the contention of Jackson Barnett:

(1)     That the adjudication of incompetency  does not preclude him from maintaining these proceedings in his own name.

(2.) That the county court of Okmulgee county never had jurisdiction of the parties in the guardianship proceedings for the appointment of Carl J. O'Hornett in 1912, and, therefore, had no jurisdiction to appoint his purported successor, E. S. Bailey, without notice.

(3) That the alleged appointment of Carl J. O'Hornett, as guardian, made on April 29, 1912, was vacated and set aside by final judgment of the district court on appeal on July 24, 1912, and that the purported order and judgment of the district court made on September 5, 1912, was void—

(a) Because said court had not recalled its mandate from the county court before it proceeded, and. therefore, was without jurisdiction.

(b) Because said judgment or mandate of the district court vacating the appointment of O'Hornett had been received by the county court, spread of record, and by the county court treated as a dismissal of said guardianship proceedings.

(c) Because said order of the district court was made by the district judge "in vacation" and not by the district court in session.

(4) That the district court erred in not rendering judgment for the plaintiff in error, Jackson Barnett, vacating and setting aside the purported appointment of E. S. Bailey as his guardian.

We have heretofore disposed of the first contention by holding that one who has been adjudged an incompetent can maintain in his own name an action to determine the legality of the judgment adjudging him an incompetent.

In support of the second contention, the appellant cites and relies upon many errors and omissions in the probate proceedings wherein O'Hornett was appointed guardian. It is contended that the allegations of the petition were insufficient to give the court jurisdiction; that the citation was not served in the manner provided by the statutes; that the court failed to find sufficient facts to support an order appointing said guardian. The defendant, however, contends that all of these errors, if any. in said proceedings have been waived by subsequent conduct on the part of appellant. In view of the fact that the case must be reversed on other grounds, we do not deem it necessary to go into the many questions raised relative to these proceedings, but in passing will say that we have seldom seen a probate matter which has been handled in such a careless and indifferent manner as the one before us.

In support of the third contention, it is insisted that judgment of the district court, reversing and vacating the order appointing Carl J. O'Hornett guardian by the county court, became final, and that the said O'Hornett has acted since that time without authority. The defendant in error, however, contends that the order of the district court made on September 5, 1912, vacated the order of April 24, 1912, and that the original appointment of O'Hornett as guardian by the county court made on April 29, 1912, was in full force and effect until his resignation was accepted by the county judge, and E. S. Bailey was appointed. The question, therefore, turns upon the validity of the order of September 5, 1912. This depends upon two questions: (1) Whether the district court was in session; and (2) conceding that the court was in session, would said order be effective to vacate said reversal without first entering an order revoking and recalling the mandate issued to the county court on June 24, 1912?

We have heretofore seen that the district court, prior to entering said order, had adjourned without fixing a day for reconvening, and that after that date the journal, required to be kept by the court clerk, showed orders made "in vacation," and that the order under consideration appeared therein under the heading "in vacation" and that there was nothing in said order to indicate that it was made by the court in session. We must conclude that said order was made by the judge in vacation, and not by the court in session, and that it is, therefore, void, as a judgment of the district court cannot be vacated and set aside by order of the judge "in vacation."

The defendant in error, however, contends that the presumption obtains that the court remained in session until it was shown by the record that it had adjourned for the term. Even if we should concede that such presumption obtains, the question then would be as to whether the journal, required to be kept by the clerk, and subsequently signed by the judge attesting the journal record as a verity, did not show that the court had adjourned and was in vacation at the time the order of September 5, 1912, was entered. See sections 686, 687. 688, and 689, C. O. S. 1921; Pettigrew v. Harmon, 62 Okla. 245, 162 Pac. 458.

We think that if the presumption should be indulged that the court continued in session, the journal record, through which the

court speaks, showing that the order of September 5th was made "in vacation," overcomes and strikes down such presumption.

On the second proposition, supra, as to the effect of the said order of September 5th, even had the court been in session, it is our opinion that the order as entered was not effective to vacate the reversal of the county court, when said judgment and mandate of the district court had, by its order, been entered on the record of the county court and had never been recalled or revoked.

Section 1428. C. O. S. 1921, provides:

"Enforcement of Decree by Probate Court. When a judgment, decree or order, from which an appeal has been taken. is wholly or partly affirmed, or is modified by the judgment rendered by the district court upon such appeal, it must be enforced, to the extent authorized by the latter judgment, by the county court, in like manner as if no appeal therefrom had been taken; and the district court must direct the proceedings to be remitted for that purpose to the county court or the judge thereof."

4 Corpus Juris, page 1246, section 3310, announces the general rule as follows:

"After a cause has been decided on appeal and the case remanded, the appellate court has no jurisdiction to grant a rehearing, at least unless it first recalls the mandate for the purpose of reinvesting itself with jurisdiction. Where the clerk of the appellate court is required by statute to remit the papers in the case to the lower court within a certain period of time after judgment rendered, the court has no jurisdiction to grant a rehearing after the lapse of the statutory period regardless of whether the papers have actually been remitted or not."

We must conclude that the judgment of the district court of June 24th, reversing the county court and decreeing that there was no valid appointment of Carl J. O'Hornett as guardian of Jackson Barnett, has, ever since its entry, been of full force and effect as a substitute for the judgment of the county court.

The district court, therefore, erred in dismissing Jackson Barnett's appeal from the county court.

In response to the plaintiff in error's 4th contention, that the district court erred in not vacating the purported appointment of E. S. Bailey, as guardian, the defendant in error makes some contention that the proceeding is not here on its merits, and that the only question presented for review is the ruling of the district court in dismissing the appeal from the county court. The defendant in error, however, has briefed the case on its merits.

The complete records of the proceedings had in the county court were before the district court, and by it considered, and such records are now before us. The ruling of the district court was, in fact, a finding against the contentions of the plaintiff in error on the merits. If we were to remand the case to the district court for further proceedings, no additional records would be necessary or competent, other than those before us at this time.

The circumstances of this particular case, as shown by the record before us, disclose that Jackson Barnett, the plaintiff in error, is now of the advanced age of 75 years; that this litigation, and numerous angles thereof, has been pending for more than 12 years; that during most of his life he has been a citizen of the rural districts with very few friends or relatives until the land allotted to him by the federal government became productive of oil; that he is in a more or less enfeebled mental state, if not actually mentally incompetent; that during the past 12 years he and his property have been under the immediate custody and care of guardians by reason of persistent efforts to sustain the void guardianship proceedings heretofore referred to. What may be the actual state of his bodily health or mental powers at present is beyond the scope of the instant inquiry. but it is reasonably certain that, at most, he has left but few remaining years of his already prolonged and too much troubled life.

To remand this case to the district court for a new trial in order to obtain the relief which he seeks, and which has been judicially decided in his favor, would, in effect, be to relegate him to litigation which would in all reasonable probability outlast his life and during the continuance of which he would not only be under the ban of the purported judicial determination of his incompetency, but would also have his property and affairs administered by a guardian whose appointment he is and has been contesting from its inception. In such retrial the only question to be determined would be the question as to the validity of the purported appointment of Carl J. O'Hornett. This question was finally determined, as we have heretofore held. by the order of the district court of Okmulgee county, entered on June 24, 1912.

In this connection. it is to be noted that the defendant in error in this proceeding is no

an adverse party in the ordinary sense of the term. Said guardian has no interest in Barnett's properties or estate in any capacity other than that as guardian, and has no right to be in possession and control of same, except upon the assumption that Barnett has been judicially determined to be incompetent by a valid order of the court, which, after such determination, appointed said guardian to act. His highest duty as such guardian is to the ward, and in relation to both his personal welfare and his property rights he can have no adverse or selfish purpose or interest to subserve; nor should such guardian be heard to urge either that removal of said ward from the shadow of an alleged adjudication of incompetency, if such removal is otherwise proper, shall be delayed, nor that his possession and control of such property shall be perpetuated through his insistency upon slower or more involved procedure than that adopted by the ward to gain relief.

In view of the fact that further proceedings of any kind, by the district court, except to again vacate the purported appointment of Carl J. O'Hornett as guardian of Jackson Barnett, would be error, we deem it the better policy to consider the entire record before us and now render such judgment as should have been rendered by the district court. rather than put the plaintiff in error to further delay and useless expense.

The appointment of E. S. Bailey as guardian of Jackson Barnett, being made without any notice whatever, can be of no more validity than the original appointment of Carl J. O'Hornett.

From the foregoing, we must conclude that the district court erred in dismissing the appeal from the county court and erred in refusing to render judgment on the record before it in favor of the plaintiff in error.

The judgment of the district court is, therefore, reversed, and remanded, with directions to enter its order vacating the appointment of E. S. Bailey, as the guardian of Jackson Barnett, and to cause the county court to enforce said judgment.

NICHOLSON, C. J., BRANSON, V. C. J., and PHELPS, LESTER, HUNT, and RILEY. J., concur. HARRISON, J., dissents.

HARRISON, J. (dissenting). I cannot concur in the conclusion reached in the majority opinion by Mr. Justice Mason, because of the ultimate effect of such conclusion, if in fact it should have any effect.

It is due to Mr. Justice Mason to say that if the subject-matter involved and object of the action were matters over which the state courts have jurisdiction, then I am inclined to believe that I would fully concur in both the reasoning and the conclusion in the majority opinion.

But as I view the law, neither the subject-matter nor the object of the action is a matter over which the state courts have jurisdiction to determine, nor power to pass binding judgment upon.

The ultimate object and purpose of the action and proceedings in the lower court and in this court are to obtain control and management of the restricted property of Jackson Barnett, a full-blood Indian. Control and management of the restricted property of this full-blood Indian was sought through probate proceedings below.

In my opinion no judgment of this court in this controversy would ever become final and binding upon the federal courts, even though no appeal or proceedings for review be taken from the judgment of this court to the Supreme Court of the United States. The federal courts would not be precluded at any time in the future from re-opening the entire proceedings and adjudicating the entire subject-matter, whatever might be the judgment of this court.

This view is prompted by the express and designed provisions of the Enabling Act, which are as follows (section 1):

"Provided. that nothing contained in the said Constitution shall be construed to limit or impair the rights of persons or property pertaining to the Indians of said territories (so long as such rights shall remain unextinguished) or to limit or affect the authority of the government of the United States to make and law or regulation respecting such Indians, their lands. property or other rights by treaties, agreement, law or otherwise, which it would have been competent to make if this act had never been issued." (34 Stat. L. 267; Bunn's Ed. secs. 502, 503.)

And section 22 of said act, to wit:

"That the Constitutional Convention provided for herein shall, by ordinance irrevocable, accept the terms and conditions of this act." (34 Stat. L. 278; Bunn's Ed. sec. 539.)

The foregoing provisions of the Act of Congress known as the Enabling Act expressly, specifically, and designedly reserve to the federal government, as such, the exclusive right to deal with the restricted property of full-blood Indians.

It not only expressly reserves to the federal government the **exclusive** jurisdiction over the restricted property of full-blood Indians,

but section 22, supra. expressly required the Constitutional Convention to accept the terms and conditions of this act by ordinance irrevocable. It not only reserved exclusive jurisdiction to the federal government, but required the Constitutional Convention to adopt an ordinance irrevocable that it would not attempt to exercise such jurisdiction.

In obedience to the above mandate of Congress, the Constitutional Convention adopted the following ordinance, to wit:

"Be it ordained by the Constitutional Convention for the proposed state of Oklahoma, that said Constitutional Convention do, by this ordinance irrevocable, accept the terms and conditions of an act of the Congress of the United States, entitled, 'An Act to enable the people of Oklahoma and the Indian Territory to form a Constitution and State Government and be admitted into the Union on an equal footing with the original states.'" Section 54. art. 25, Williams' Constitution.

In view of the foregoing mandatory terms of the Enabling Act, and the foregoing irrevocable ordinance adopted by the Constitutional Convention, it impresses me as either an unwarranted assumption of power or a blind tumbling into folly for the courts of this state to attempt to exercise jurisdiction over the subject-matter here involved.

The state not only observed and accepted the restrictive reservations imposed by section 1, but humbly complied with the requirements of section 22 of the Enabling Act, and thereby not only relinquished all claim of jurisdiction over such matters, but completely left exclusive jurisdiction over such matters to the federal government.

Congress seems to have been unwilling to entrust the management and control of the restricted property of full-blood Indians to the state courts, and therefore made the foregoing express reservations and imposed the foregoing mandatory conditions upon the Constitutional Convention, all of which were accepted through the ordinance above set forth, which was agreeable to and accepted by the federal government, the proclamation of statehood was thereupon issued and it thereby became a binding compact between the federal government, as such, and the sovereign state, as such.

No state officer had authority thereafter to exercise any control over the restricted property of full-blood Indians until the passage of the Act of June 14, 1918, 40 Stat. at L. 606, which conferred upon county courts jurisdiction to determine heirship of members of the Five Civilized Tribes. and the district courts of the state, jurisdiction to partition estates pursuant to a determination of heirship by the county courts.

It is immaterial in this connection to say whether Congress, in view of the terms of the Enabling Act, and the acceptance of such terms in the Constitution, had power to impose upon such officers the duty to perform purely federal functions and force state officers to discharge said duties, but it is clear that the duties thus imposed upon the county and district courts by said act are purely federal functions.

When the county court acts in a determination of heirship of full-blood Indians, it acts by virtue of the foregoing act of Congress, and in doing so acts purely as a federal instrumentality.

The same is true as to a decree of partition of restricted real estate of full-blood Indians of the tribes mentioned in the act; therefore, when the county court acts in the determination of heirship, or the district court acts in the partition of restricted real estate of full-blood Indians, they act purely as a federal instrumentality, because the Enabling Act expressly reserved exclusive jurisdiction over such matters to the federal government.

Hence, so far as the state courts, as such, are concerned, it is immaterial whether in such matters the county court or the district court acted erroneously, irregularly, or fraudulently. If either of such courts should act in that manner, their acts should be corrected in the federal courts and not in the state courts, because the state courts under the terms imposed by the Enabling Act and accepted by the Constitutional Convention renounced all claim of jurisdiction over such matters.

Therefore, in the present controversy the proceedings in the appointment of a guardian for Jackson Barnett, were nothing more nor less than preliminary proceedings for the management and control of the restricted property of Jackson Barnett. Therefor this court had no jurisdiction over the controversy, its judgments could not be made binding upon the federal government, and in my view jurisdiction should not have been entertained; the action should have been dismissed for want of jurisdiction.

I shall not encumber the records with all the reasons which occur to me for entertaining this view. The express conditions, the mandatory terms of the Enabling Act. and acceptance thereof and obedience thereto by the Constitutional Convention, it seems to me are sufficient basis for the views entertained

I therefore dissent from the exercise of jurisdiction over the matters herein involved.

Note.—See under (1) 32 C. J. p. 763, §570. (2) 15 C. J. p. 1004, §418; pp. 1023. 1024. (Anno). §443. (3) 4 C. J. p. 1247, §3311 (Anno): 34 C. J. p. 220, §443. (4) 15 C. J. p. 979 §404; p. 1004, §418. (5) 4 C. J. p. 1246. §3310.